Jennifer MILLER, Plaintiff
and Appellee,

v.

Kathy BROCKSMITH and Jack
Brocksmith, Defendants
and Appellant.

No. 900016–CA.

Court of Appeals of Utah.

Jan. 22, 1992.

Kathy Brocksmith, pro se.

Jennifer Miller, pro se.

Before BILLINGS, GARFF and RUSSON, JJ.

## OPINION

RUSSON, Judge:

Appellant Kathy Brocksmith appeals the trial court's refusal to set aside a default entered against her on November 13, 1989. The judgment entered pursuant to the default vacated Kathy Brocksmith's adoption of her husband's child from a previous marriage. Kathy Brocksmith also appeals the trial court's removal of the child from her physical custody and placement of him in the temporary care, custody, and control of his natural mother, Jennifer Miller. We affirm.

## I. FACTS

Jack Brocksmith and Jennifer Miller were married in May 1979, in Quincy, Illinois. During the marriage, Mr. Brocksmith and Ms. Miller had one child, Mark Elliot Brocksmith, born on June 13, 1983. In November 1983, Ms. Miller was granted a decree of divorce from Mr. Brocksmith. The decree granted Mr. Brocksmith custody of Mark, subject to Ms. Miller's reasonable visitation rights. Ms. Miller exercised her visitation rights from November 1983 until August 1987. Such visitation included phone calls, periodic visits, letters, and gifts.

On July 20, 1984, Mr. Brocksmith married Kathy Brocksmith. In August 1987, the Brocksmiths moved from their home in Illinois, without informing Ms. Miller of their whereabouts. In July 1988, the Brocksmiths petitioned the district court in Cache County to allow Mrs. Brocksmith to adopt Mark. The petition stated that since the natural mother had abandoned Mark by making no effort to maintain a parental relationship with him for a period in excess of five years, her consent was not required for adoption, pursuant to Utah Code Ann. § 78–30–5 (Supp.1991). Based upon the representations of the Brocksmiths, the court found that the natural mother, Ms. Miller, had abandoned Mark, that her consent was not required, and therefore granted the Brocksmiths' adoption petition as prayed.

Ms. Miller searched extensively for Mark, and in August 1989, located him with the Brocksmiths in Logan, Utah. At that time, she learned of the adoption decree wherein her parental rights had been terminated and Mrs. Brocksmith had been allowed to adopt Mark.

On September 7, 1989, Ms. Miller filed a complaint in the district court in Cache County, alleging that the adoption decree had been obtained by fraud and seeking to have the same set aside. The summons and complaint were served separately upon

Mr. Brocksmith, who was incarcerated, and Mrs. Brocksmith in Logan, Utah. Both defendants failed to answer the complaint and on November 13, 1989, their defaults were entered.

On November 15, 1989, Ms. Miller filed an ex parte petition for a writ of habeas corpus, asking that Mark be brought before the court and delivered to her custody and control, since Mr. Brocksmith was incarcerated and was expected to be imprisoned for an extended period of time.

On November 16, 1989, the child was brought before the court, and a hearing was held. Both Ms. Miller and Mrs. Brocksmith were present and represented by counsel. Mrs. Brocksmith moved the court to set aside the default, claiming excusable neglect in failing to answer the complaint. After hearing testimony on this matter, the court denied the motion and allowed the default to stand.

The court then granted the relief sought in the complaint and set aside the adoption, thereby restoring custody of the child as established by the original divorce decree. That decree provided that Mr. Brocksmith was vested with legal and physical custody of the child subject to Ms. Miller's reasonable visitation rights.

However, since Mr. Brocksmith was in prison and could not exercise physical custody of the child, the court proceeded to determine "where best to have the child spend his time." After hearing testimony from Mrs. Brocksmith, Ms. Miller, and Mr. Yaggi, a case worker at the Utah Division of Social Services, the court determined that it was in Mark's best interest to be in the custody of his natural mother, Ms. Miller, for "purposes of visitation pursuant to the decree." The trial court did not modify the original decree of custody, but stated:

> I will order that the child be returned to the natural mother pursuant to the writ of habeas corpus. And I do so, and the record should clearly reflect, because—I do so because in the opinion of the court this is the natural mother, this is the mother who has visitation rights pursuant to the decree which I'm recognizing as standing. And—and while this is

some deviation from the visitation rights set forth in that, this is an unusual situation and the custodial parent is not available to exercise any custody over the child....

And further:

> And I'm not ruling that custody is changed at this time. I am allowing him to your custody for purposes of visitation pursuant to the decree....

On December 26, 1989, the court entered its written findings of fact, conclusions of law, and order annulling the adoption of Mark Elliot Brocksmith and restoring to the natural mother all parental rights and duties. The court also entered its findings of fact, conclusions of law, and order on the habeas corpus petition granting Ms. Miller physical custody of the minor child.

On January 16, 1990, attorney Robert Gutke filed a notice of appeal on behalf of both Mr. Brocksmith and Mrs. Brocksmith. However, Mr. Brocksmith subsequently filed an affidavit indicating that he continues to be incarcerated in a federal correctional facility, that he and Mrs. Brocksmith are involved in divorce proceedings, that he instructed Mr. Gutke to withdraw as his counsel of record, and that he is not a party to this appeal. Subsequently, Mr. Gutke also withdrew as attorney for Mrs. Brocksmith, and Mrs. Brocksmith continued the appeal pro se. Likewise, Ms. Miller is not represented by counsel on appeal.

## II. ISSUES

Mrs. Brocksmith raises three arguments on appeal: (1) the trial court erred in failing to set aside the default, (2) her due process rights were violated when the trial court proceeded with the habeas corpus matter without adequate notice to her, and (3) the trial court erred in changing custody without adhering to established legal and equitable standards.

## III. ANALYSIS

### A. Mrs. Brocksmith's Motion to Set Aside Default

Mrs. Brocksmith argues that the trial court erred in not setting aside the default

because of excusable neglect. In support of this claim, she alleges that she relied upon representations from an attorney that her interests were being protected. After hearing Mrs. Brocksmith's testimony and the testimony of other relevant witnesses, the trial court denied Mrs. Brocksmith's motion and allowed the default to stand.

■ A trial court's ruling on a motion to set aside a default involves the trial court's discretionary power, and we will not disturb the trial court's decision in such matters absent a clear abuse of such discretion. *Fackrell v. Fackrell*, 740 P.2d 1318, 1320 (Utah 1987); *accord State v. Musselman*, 667 P.2d 1053, 1055 (Utah 1983) (citing *Airkem Intermountain, Inc. v. Parker*, 30 Utah 2d 65, 67–68, 513 P.2d 429 (1973); *Mayhew v. Standard Gilsonite Co.*, 14 Utah 2d 52, 376 P.2d 951 (1962); *Warren v. Dixon Ranch Co.*, 123 Utah 416, 260 P.2d 741 (1953)).

■ Rule 55(c) of the Utah Rules of Civil Procedure, like its federal counterpart, governs the setting aside of a default prior to the entry of judgment, and states that "[f]or good cause shown the court may set aside an entry of default...." *Id.* Since Rule 55(c) of the Utah Rules of Civil Procedure and Rule 55(c) of the Federal Rules of Civil Procedure are substantively identical, "we freely refer to authorities which have interpreted the federal rule." *Gold Standard, Inc. v. American Barrick Resources Corp.*, 805 P.2d 164, 168 (Utah 1990) (citations omitted). The setting aside of a default under Rule 55(c) lies within "the sound discretion of the trial court, applying a standard of liberality and resolving all doubts in favor of the defaulting party." *In re Arthur Treacher's Franchisee Litig.*, 92 F.R.D. 398, 415 (E.D.Pa. 1981) (interpreting Rule 55(c) of the Federal Rules of Civil Procedure) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244–45 (3d Cir.1951)). While Rule 55(c) distinguishes between the setting aside of a default and the setting aside of a default judgment under Rule 60(b), "[t]he factors described in Rule 60(b) are relevant to [a] determination of whether defendant has shown 'good cause.'" *Spica v. Garc-*

zynski, 78 F.R.D. 134, 135 (E.D.Pa.1978) (interpreting Rules 55(c) and 60(b) of the Federal Rules of Civil Procedure). Thus, the factors to be considered include whether Mrs. Brocksmith's failure constitutes excusable neglect and whether Mrs. Brocksmith has presented a meritorious defense to the action. *See Musselman*, 667 P.2d at 1056 (citing *Downey State Bank v. Major-Blakeney Corp.*, 545 P.2d 507 (Utah 1976); *Mason v. Mason*, 597 P.2d 1322, 1323 (Utah 1979); *DeHoney v. Hernandez*, 122 Ariz. 367, 595 P.2d 159 (1979); *White v. Holm*, 73 Wash.2d 348, 438 P.2d 581 (1968)); *see also In re Arthur Treacher's Franchisee Litig.*, 92 F.R.D. at 415 (citing *General Tire & Rubber Co. v. Olympic Gardens*, 85 F.R.D. 66 (E.D.Pa.1979)). Moreover, the question of a meritorious defense arises only if excusable neglect has been shown. *Musselman*, 667 P.2d at 1056 (citing *Board of Educ. of Granite School Dist. v. Cox*, 14 Utah 2d 385, 384 P.2d 806 (1963)).

■ Mrs. Brocksmith bases her claim of excusable neglect on alleged assurances from an attorney that her interests were being protected. She testified at the hearing below that it was her understanding that her husband had arranged for an attorney to answer Ms. Miller's complaint, and that she had contacted the said attorney and was assured by him that her rights were being protected. She claims that despite such assurances, the attorney never filed a response to Ms. Miller's complaint and that such constitutes excusable neglect on her part.

■ While reliance on an attorney's assurances that one's rights are being protected could, in the appropriate circumstances, be seen as excusable neglect, such is not the case here. In the present case, the alleged attorney never testified, nor was there so much as an affidavit or writing by such attorney suggesting retention in this matter. The only evidence offered was Mrs. Brocksmith's testimony, and that was based on mere hearsay to which proper objection was made. Moreover, the trial court expressly found Mrs. Brocksmith's testimony lacking in credibility. The trial court stated in relevant part:

The court's going to deny the motion to set aside the default. I just frankly find—Mrs. Brocksmith's not very credible. She denies having received service, and then says she doesn't understand what's going on. Said it happened to her husband and he told her about it. The evidence is clear that that's not in fact what happened. She personally knew. Her husband is presently incarcerated. That will go to a second point. But I'm going to deny your motion to set aside the default. The default will stand.

■ Having found no excusable neglect, it is not necessary to determine whether Mrs. Brocksmith had a meritorious defense to Ms. Miller's complaint. *See, e.g., Musselman,* 667 P.2d at 1056. Accordingly, since the trial court properly ruled that there had been no excusable neglect, it clearly did not abuse its discretion in denying Mrs. Brocksmith's motion to set aside the default and in allowing the default to stand, and therefore, we will not disturb the trial court's decision. *See Fackrell,* 740 P.2d at 1320; *Musselman,* 667 P.2d at 1056 (citation omitted).

### B. Notice on Writ

■ Mrs. Brocksmith claims that the trial court violated her due process rights by proceeding with the habeas corpus action without providing her with adequate notice. We disagree.

The writ of habeas corpus is an extraordinary writ codified in Rule 65B of the Utah Rules of Civil Procedure.[1] Rule 65B(f)(3), which was in effect when Ms. Miller filed her petition, stated in relevant part:

Upon the filing of the complaint the court shall, unless it appears from such complaint or the showing of the plaintiff that he is not entitled to any relief, issue a writ directed to the defendant commanding him to bring the person alleged to be restrained before the court at a time and place therein specified, at which time the court shall proceed in a summary manner to hear the matter and render judgment accordingly....

*Id.* There is no statutory minimum time requirement between the time at which a writ is issued and the time at which the defendant must produce the restrained person before the court. In such matters, the legislature has given the court ultimate discretion. Rule 65B(h) stated in pertinent part:

Any alternative writ issued by a court or a judge thereof, may be made returnable, and a hearing thereon may be had, at *any* time as such court may in its discretion determine.

*Id.* (emphasis added).

While the judge has the discretion under Rule 65B to make the writ returnable at any time, including immediately upon its issuance, such action must not offend traditional notions of due process. Thus, it has been held that a parent is entitled to due process protections, including notice, when the custody of his or her child is at issue. *Smart v. Cantor,* 117 Ariz. 539, 574 P.2d 27, 30 (1977) (citing *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972)); *accord Walden v. Walden,* 355 So.2d 372, 376 (Ala.Civ.App.1978).

However, these cases are inapplicable to the case at bar for two reasons. First, the trial court had already ruled that the fraudulently obtained adoption was void. Thus, at the time at which the judge considered the habeas corpus issue, Mrs. Brocksmith no longer had any legal right to custody of Mark.

Secondly, Mrs. Brocksmith is mistaken in her assertion that this writ was used to modify the original decree of legal custody. Such is simply not the case; the trial court did not change custody, but merely enforced the custody terms of the divorce decree while addressing the problem of Mr. Brocksmith's incarceration. While the trial court's written findings of fact, conclusions of law, and order do not specifically state that Ms. Miller's custody was to be temporary, it is clear from the record that legal

---

**1.** Rule 65B, Utah Rules of Civil Procedure, was amended effective September 1, 1991. The amendment represents a complete reorganization of the former rule. *See* Advisory Committee Note, Rule 65B, Utah Rules of Civil Procedure (August 1991 Supplement).

custody was to remain with Mr. Brocksmith, while physical custody was to be with Ms. Miller on a temporary basis. As the trial court stated:

> I will order that the child be returned to the natural mother pursuant to the writ of habeas corpus. And I do so, and the record should clearly reflect, because—I do so because in the opinion of the court this is the natural mother, this is the mother who has visitation rights pursuant to the decree which I'm recognizing as standing. And—and while this is some deviation from the visitation rights set forth in that, this is an unusual situation and the custodial parent is not available to exercise any custody over the child.... And I'm not ruling that custody is changed at this time. I am allowing him to your custody for purposes of visitation pursuant to the decree....

Moreover, the minute entry of November 16, 1989, states in relevant part:

> The court rules to set aside the adoption proceedings. The natural custodial parent is not able to take custody, so the natural mother is granted temporary custody of the child until such time as a modification of the dissolution of marriage can be heard.

The legal effect of the trial court's ruling was to restore custody as originally decreed prior to the illegal adoption of the child. There has been no change in the legal custody of the child. Mr. Brocksmith still has legal custody, but for the practical reason that he is presently incarcerated, he cannot exercise physical custody. Therefore, the trial court granted Ms. Miller extended visitation rights until further order of the court. This, in effect, gives only temporary custody of the child to Ms. Miller. Since the trial court was not adjudicating the custody rights of the parties, we find Mrs. Brocksmith's claims to the contrary to be without merit.

### C. Habeas Corpus and Custody Proceedings

■ Lastly, Mrs. Brocksmith claims that while the hearing on the writ of habeas corpus was not technically a custody proceeding, the trial court was nevertheless obligated to follow the equitable standards promulgated by Utah courts in custody determinations. We disagree.

As stated above, this was not a custody proceeding. After Mrs. Brocksmith failed to respond to Ms. Miller's complaint, her default was entered. After ordering the default to stand and judgment be entered, the court heard testimony and ordered extended visitation rights to the mother, Ms. Miller. The legal effect of the trial court's ruling is that Mr. Brocksmith retains legal custody of the child with extended visitation to the natural mother, Ms. Miller. No change in custody has occurred. Since the trial court did not change custody, and since Mrs. Brocksmith has no legal right to the child, her claims here are without merit.

### IV. CONCLUSION

We affirm the decision of the trial court in allowing the default to stand and the subsequent judgment setting aside the adoption and giving Ms. Miller the temporary care, custody, and control of the child. Mr. Brocksmith still has legal custody, but Ms. Miller has temporary custody until further order of the court. However, since the trial court's written findings of fact, conclusions of law, and order did not clearly indicate that such custody was temporary only, we remand this matter to the trial court to enter an amended judgment consistent with this decision.

BILLINGS and GARFF, JJ., concur.