1999 UT App 056

**Margaret THIELE, Petitioner,**

v.

**Honorable Lyle R. ANDERSON, Judge of Seventh District Court in and for Grand County, State of Utah, Respondent.**

**No. 981687–CA**

Court of Appeals of Utah.

Feb. 25, 1999.

A. Howard Lundgren, Salt Lake City, for Petitioner.

Brent M. Johnson, Salt Lake City, for Respondent.

Before GREENWOOD, Associate P.J., and JACKSON and ORME, JJ.

## OPINION

JACKSON, Judge:

¶ 1 Margaret Thiele petitions this court for extraordinary relief under Utah Rule of Civil Procedure 65B(d). She challenges Seventh District Court Judge Lyle R. Anderson's order purporting to refuse her notice dismiss-

ing her adoption petition and to maintain jurisdiction over the adoption. We grant her petition.

## BACKGROUND

¶ 2 When Thiele, a single woman, began trying to adopt the child in this case, she lived in Moab, Grand County, and worked for the Utah State Division of Child and Family Services (DCFS). Before she filed her adoption petition, she participated in a "preplacement adoptive study" required by Utah Code Ann. § 78–30–3.5 (1996). On May 8, 1998, the study was issued, stating, in sum, "Margaret Thiele is highly qualified to be an adoptive parent. Her motivations as an applicant are assessed as genuine and secure from censure." Thiele filed her adoption petition in Seventh District Court on July 10, 1998. The child was born on July 13, 1998 and was placed with Thiele. Meanwhile, Thiele was looking for work in the Salt Lake area, partly to avoid any potential contact with the child's birth parents who also lived in the relatively small city of Moab.

¶ 3 The birth parents each signed unconditional consents "for the minor child to be adopted by the Adoptive Parent(s)," stating that neither wished to know the identity of the "Adoptive Parent(s)." The birth mother gave her consent in person before Judge Anderson on August 5, 1998.

¶ 4 On August 24, 1998, Judge Anderson forwarded a copy of the preplacement study to the director of DCFS, along with a letter asking the director to ensure that the study "receive[ ] an independent screening" in view of Thiele's employment with DCFS.[1] Judge Anderson's letter went on to say:

> In this case, the birth parents have elected to have nothing to say about the selection of the adoptive parent. However, the birth mother told me when I took her consent that she believes the child has

been placed in a two parent home. According to the home study, the placement is in a single parent home. No one involved in the adoption to this point is able to exercise independent judgment in the best interests of the child, except me. I am considering appointment of a guardian ad litem for the child to help me evaluate those interests.

> I am told that there is nothing about this child that would make it hard to place. The birth mother also accepted the possibility that I might order placement of the child through a licensed agency if I determine to deny the petition.

On August 28, 1998, Judge Anderson appointed a Guardian Ad Litem (GAL) to evaluate the child's best interests in recommending what the court should do.

¶ 5 On August 31, 1998, Thiele moved with the child to Salt Lake City, where she took a new job. Three days later, she filed under Utah Rule of Civil Procedure 41(a)(1) a notice dismissing her adoption petition in Seventh District Court. Her notice stated that she had moved to Salt Lake County and, "[t]herefore, pursuant to U.C.A. § 78–30–7, the correct jurisdiction for this action is the Third District Court in and for Salt Lake County, State of Utah, the place of Petitioner's current residence."

¶ 6 The next day, September 4, 1998, Thiele filed in the Third District Court a new adoption petition, in which she disclosed that she had originally filed a petition in Seventh District Court, but had moved to Salt Lake County, then filed a notice dismissing her earlier petition. She attached to the new petition a copy of the original petition and supporting documents, along with a copy of her dismissal notice. That same day, Thiele successfully moved the Third District Court to extend the time for filing the adoption

---

1. In his letter, Judge Anderson said that he was sending a copy of the study to DCFS "pursuant to Section 78–30–3.5(3), *Utah Code.*" Before July 1, 1998, the statute stated, "A copy of each preplacement adoptive study shall be submitted to the Division of Child and Family Services. Through random screening, that department shall assess the quality and competence of preplacement adoptive studies conducted." *Id.*

§ 78–30–3.5(3) (1996). However, at the time Judge Anderson sent the study, the statute no longer required that preplacement adoptive studies or evaluations be submitted to DCFS. *See id.* § 78–30–3.5 (Supp.1998). As of July 1, 1998, the statute simply declares, "A copy of the preplacement adoptive evaluation shall be filed with the court." *Id.* § 78–30–3.5(3)(a).

petition and to retain custody of the child pending a final adoption decree.[2]

¶ 7 Also on September 4, the DCFS director replied in writing to Judge Anderson's request for an independent screening of the preplacement adoptive study. The director stated that DCFS could not screen the study because of the conflict of interest resulting from Thiele's employment with DCFS, but that DCFS would contract with an independent agency to review the study. Responding to Judge Anderson's concerns about the single-parent aspect of the adoption, the director noted, "Presently nothing in the DCFS Adoption Policies and Practices prohibits the placement of an infant (special needs or otherwise) with a single parent."

¶ 8 On September 16, 1998, Judge Anderson issued a sua sponte order reacting to Thiele's notice voluntarily dismissing her adoption petition. The judge ruled that "Rule 41(a) is either entirely inapplicable to this case, or is not available to petitioner under the circumstances of this case." On that basis, he professed to "void[ ] petitioner's attempted dismissal of her petition." The judge then gave Thiele two options: earn dismissal by showing that she did not live in Grand County thirty days after receiving the child or move to transfer the case. Regarding the latter, the judge stated that he would grant a motion to transfer the case only if (1) the receiving court would be told that the birth parents gave up the child believing that it went to a two-parent family; and (2) Thiele would not object to appointment of a GAL at her expense.[3]

¶ 9 On October 8, 1998, the independent agency submitted its review of the preplacement study, essentially approving it. The

petition filed in Third District Court was assigned to Judge Atherton, who will not act further in this case until we resolve the issue of whether Judge Anderson retains jurisdiction.

¶ 10 Thiele then filed a petition for extraordinary relief with this court asking for relief from Judge Anderson's order purporting to maintain jurisdiction. Under Utah Rule of Civil Procedure 65B(d)(2)(A) and (B), she asserts that relief is warranted because Judge Anderson "has exceeded [his] jurisdiction or abused [his] discretion" and "has failed to perform an act required by law as a duty of office, trust or station." Specifically, she asks that we (1) validate her notice of voluntary dismissal without prejudice; (2) vacate Judge Anderson's September 16, 1998 order on the basis that his jurisdiction over this case ended when Thiele filed her dismissal notice; and (3) rule that the Third District Court has jurisdiction over the adoption petition and Judge Atherton has authority to hear the petition.[4]

## STANDARD OF REVIEW

¶ 11 Governing our review of the trial court's actions in cases involving a petition for extraordinary relief, Utah Rule of Civil Procedure 65B(d)(4) states, "Where the challenged proceedings are judicial in nature, the court's review shall not extend further than to determine whether the respondent has regularly pursued its authority." The application of Rules 41 and 81 of the Utah Rules of Civil Procedure in adoption proceedings is a question of law, which we review for correctness. *See Utah Med. Prods., Inc. v. Searcy,* 958 P.2d 228, 231 (Utah 1998);

---

2. Thiele had to move to extend the time to file her new petition because she was required by statute to file the petition "within 30 days of the date the adoptee is placed in the home of the petitioner[ ] for the purpose of adoption, unless the time for filing has been extended by the court." Utah Code Ann. § 78-30-7 (Supp.1998). Although she had timely filed her petition in Seventh District Court, about 52 days had passed since the child was placed in her home before she filed in Third District Court.

3. Judge Anderson's statement that he would add these conditions to a transfer order shows why Thiele may have chosen to voluntarily dismiss

and refile, instead of moving for change of venue under Utah Code Ann. § 78-13-9 (1996). The venue statute does not require that she take the latter route.

4. We decline to rule on the Third District Court's jurisdiction and Judge Atherton's authority. Because Judge Atherton's jurisdiction and authority have not been directly challenged, such a ruling would appear to be inappropriately aimed at a potential future challenge, along the lines of an advisory opinion. *See Rio Algom Corp. v. San Juan County,* 681 P.2d 184, 196 (Utah 1984).

*Goldberg v. Jay Timmons & Assocs.,* 896 P.2d 1241, 1242 (Utah Ct.App.1995) (stating interpretation of civil procedure rule is legal question). Further, whether Judge Anderson has jurisdiction over Thiele's petition is also a question of law reviewed under the correctness standard. *See Jensen v. Bowcut,* 892 P.2d 1053, 1055 (Utah Ct.App. 1995). We must thus extend our review to accord no deference to Judge Anderson's decision on these issues. *See State v. Pena,* 869 P.2d 932, 936 (Utah 1994).

## ANALYSIS

### I. Applicability of Rules of Civil Procedure in Adoptions

¶ 12 Thiele argues that Utah Rule of Civil Procedure 41(a)(1) allows her to voluntarily dismiss her uncontested adoption petition without prejudice. Judge Anderson counters that Rule 41(a)(1) may not be used to dismiss the petition. His contention rests on Utah Rule of Civil Procedure 81(a), which reads in pertinent part: "These rules [of civil procedure] shall apply to all special statutory proceedings, except insofar as such rules are by their nature clearly inapplicable."[5] He argues adoptions are "special statutory proceedings" to which the rules of civil procedure—Rule 41(a)(1) in particular—"are by their nature clearly inapplicable." Utah R. Civ. P. 81(a).

¶ 13 We need not reach the issue of whether adoptions are special statutory proceedings under Rule 81(a) because, even if they are, we hold that the rules of civil procedure as a whole are not "by their nature clearly inapplicable" to adoptions. *Id.* More specifically, we hold Rule 41(a)(1) is not by its "nature clearly inapplicable" to uncontested adoption proceedings. *Id.*

■ ¶ 14 In determining whether civil procedure rules generally apply to adoption proceedings, as well as whether a specific rule applies, "our primary goal is to give effect to the legislature's intent in light of the purpose the statute was meant to achieve." *Evans v.*

*State,* 963 P.2d 177, 184 (Utah 1998). We adhere to the general tenets of statutory construction, which state that " 'the best evidence of legislative intent is the plain language of the statute.' " *Jensen v. IHC Hosps., Inc.,* 944 P.2d 327, 331 (Utah 1997) (quoting *Sullivan v. Scoular Grain Co.,* 853 P.2d 877, 879 (Utah 1993)). We thus determine whether civil procedure rules apply to adoption proceedings by considering the plain language of the adoption statute. *See Valcarce v. Fitzgerald,* 961 P.2d 305, 318 (Utah 1998). We view the adoption statute "as a comprehensive whole, not in a piecemeal fashion." *Field v. Boyer Co., L.C.,* 952 P.2d 1078, 1085 (Utah 1998). Moreover, we must "give meaning to all provisions in [the] statute." *A.C. Fin., Inc. v. Salt Lake County,* 948 P.2d 771, 779 (Utah 1997). Finally, we note that "[l]iberality in the[ ] interpretation and application [of the rules of civil procedure] should be indulged where no prejudice or disadvantage to anyone results." *Utah Sand & Gravel Prods. Corp. v. Tolbert,* 16 Utah 2d 407, 408, 402 P.2d 703, 704 (Utah 1965).

### A. General Applicability of Rules of Civil Procedure

■ ¶ 15 We first address whether, in general, the rules of civil procedure are "by their nature clearly inapplicable" to adoption proceedings. Utah R. Civ. P. 81(a). Our examination of the adoption statute initially reveals one section in which the rules of civil procedure are specifically invoked: "With regard to a person whose consent is necessary under Section 78–30–4.14, service shall be in accordance with the provisions of the Utah Rules of Civil Procedure." Utah Code Ann. § 78–30–4.13 (Supp.1998). Further, although the adoption statute does set forth certain procedural requirements, *see, e.g., id.* § 78–30–4.13 (listing specific persons to be notified of adoption proceeding); *id.* § 78–30–7 (1996) (stating "[a]doption proceedings shall be commenced by filing a petition with the clerk of the district court in the district where the person adopting resides, or with

---

5. Outside of "special statutory proceedings" to which the civil procedure rules are "by their nature clearly inapplicable," Utah R. Civ. P. 81(a), the Utah Rules of Civil Procedure "shall govern the procedure in the courts of the state of Utah in all actions, suits, and proceedings of a civil nature." Utah R. Civ. P. 1(a).

the juvenile court"), the statute does not contain—nor does it purport to contain—a complete set of procedural guidelines to govern adoptions. The adoption statute itself then leads to a conclusion contrary to Judge Anderson's assertion that the rules of civil procedure are inherently and obviously inapplicable to adoption proceedings.

¶ 16 In addition, case law shows that the rules of civil procedure have been implicitly accepted for use in Utah adoption cases. For instance, in *In re Baby Boy Doe v. V.H.*, 894 P.2d 1285 (Utah Ct.App.1995), although she did not prevail, the birth mother brought a valid motion to dismiss an adoption petition under Rule 60(b). *See id.* at 1288. *Maertz v. Maertz*, 827 P.2d 259, 260–62 (Utah Ct. App.1992), presented a nearly identical situation. Also, in *Miller v. Brocksmith*, 825 P.2d 690 (Utah Ct.App.1992), we did not challenge the adoptive mother's use of Utah Rule of Civil Procedure 55(c) to try to set aside a default judgment vacating an adoption. *See id.* at 693–94. This court did not question the applicability of the rules of civil procedure in any of the above adoption cases. In short, our comprehensive review of the adoption statute's plain language and our past approval of the use of civil procedure rules in adoptions persuade us that, in general, the rules of civil procedure are not "by their nature clearly inapplicable" to adoption proceedings.[6] Utah R. Civ. P. 81(a).

### B. Applicability of Rule 41(a)(1)

¶ 17 We next consider more particularly whether using Rule 41(a)(1) to voluntarily dismiss an uncontested adoption petition is

intrinsically incompatible with the adoption statute. Judge Anderson urges that it is on two grounds: First, he asserts that the rule's language compels the conclusion that the rule may not be used unless an adverse party is involved in a case.[7] Second, he argues, "Given the public policy and state concerns of ensuring that adoption proceedings are conducted in a child's best interest, it is very unlikely that the Legislature contemplated allowing a petitioner this type of control over a proceeding."

¶ 18 Before addressing Judge Anderson's contentions, we note that the only mention in the adoption statute of dismissing an adoption petition is as follows: "If the person or agency conducting the evaluation disapproves the adoptive placement, either in the preplacement or postplacement adoptive evaluation, the court may dismiss the petition." Utah Code Ann. § 78–30–3.5(5) (Supp.1998). Therefore, but for the rules of civil procedure, no other mechanism would exist for a party to move to dismiss an adoption petition. Certainly, the ability to voluntarily dismiss an adoption petition is a handy procedural tool in some cases, promoting judicial economy. For example, a scenario could arise in which a couple files an adoption petition, then soon after, decides to divorce and give up the adoption opportunity in the child's best interests. Under those circumstances, Rule 41(a)(1) is an easy way to excuse the couple, the child, and the judicial system from a difficult situation and move the child toward permanency with another adoptive placement.

---

6. Our analysis is bolstered by analogy to the Utah Rules of Juvenile Procedure, which state: "When the proceeding involves ... adoption ..., the Utah Rules of Civil Procedure shall apply unless inconsistent with these rules." Utah R. Juv. P. 2(a). Thus, in adoption proceedings initiated in juvenile court, as opposed to district court, the rules of civil procedure specifically apply. We can hardly designate the civil procedure rules as "by their nature clearly inapplicable" to adoptions when they have actually been sanctioned by our court system for use in adoption proceedings, albeit in a different setting. Regarding use of the civil procedure rules in adoption proceedings in juvenile court versus district court, as a policy matter, we see no meaningful distinction between the two courts.

7. Rule 41(a)(1) reads in pertinent part:

[A]n action may be dismissed by the plaintiff without order of court by filing a notice of dismissal at any time before service by the adverse party of an answer or other response to the complaint permitted under these rules. Unless otherwise stated in the notice of dismissal, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim.

Utah R. Civ. P. 41(a)(1).

¶ 19 Turning now to Judge Anderson's arguments, we acknowledge that Rule 41(a)(1) seems to contemplate that an adverse party will be involved in the litigation. After all, a plaintiff's ability to use the rule is limited only by the theoretical adverse party's response to the plaintiff's action.[8] However, nothing in the rule's language *requires* that an adverse party exist for the plaintiff to file a notice of dismissal. The adverse party's response is mentioned only as a way of measuring the time in which the plaintiff may use Rule 41(a)(1). This is to ensure a "defendant is not hurt." *McCall–Bey v. Franzen*, 777 F.2d 1178, 1184 (7th Cir.1985).[9] The rule is meant to guard potential adverse parties from being harassed and prejudiced by dismissal of an action—e.g., being inconvenienced and investing time and financial resources for naught. *See* 8 James W. Moore, *Moore's Federal Practice* § 41.10, at 41–18 (3d ed.1997). When, as in this case, no defendant exists, presumably no one is prejudiced by the notice of dismissal. Under the language and policies of Rule 41(a)(1), then, the lack of an adverse party does not affect the plaintiff's ability to file a notice of dismissal regarding an uncontested adoption petition.

¶ 20 Even so, Judge Anderson argues that prejudice does occur when Rule 41(a)(1) is used in these types of cases. He worries that the child's best interests and the State's concern for those best interests may be jeopardized. He argues that, on the State's behalf, the trial court "plays a significant role in overseeing the [adoption] process," protecting the child's best interests. We agree; however, Judge Anderson fails to recognize that the State's agent, the trial court, remains in place with an eye to the child's best interests when a petitioner refiles the petition.[10] We have no reason to question Judge Atherton's ability to ensure this adoption is in the child's best interests.

---

8. "For all practical purposes, the words 'petitioner' and 'plaintiff' are synonymous. 'The nature of the proceeding and the court in which it is instituted determines which term is the more appropriate under the circumstances.' ... The plaintiff is the 'person who brings an action.' " *Housing Auth. v. Farabee*, 284 N.C. 242, 200 S.E.2d 12, 15 (1973) (citations omitted); *see also Schroedel Corp. v. State Highway Comm'n*, 34 Wis.2d 32, 148 N.W.2d 691, 696 (1967) (" '[T]he words "petitioner" and "plaintiff" [are] practically synonymous in legal nomenclature.' " (quoting *Atlantic Coast Lumber Corp. v. Morrison*, 152 S.C. 305, 149 S.E. 243, 245 (1929))).

9. Regarding our use of materials interpreting Federal Rule 41(a)(1):

This court recognizes the persuasiveness of federal interpretations when the state and federal rules are similar and few Utah cases deal with the rule in question. Here, the wording of Utah Rule of Civil Procedure 41(a) is nearly identical to that of Federal Rule of Civil Procedure 41(a), and counsel have not cited us to, nor has our own research revealed, any Utah cases addressing the [Rule 41(a)(1) issues involved here]. Thus, federal interpretations of Federal Rule of Civil Procedure 41(a), while not binding, are helpful in this case.

*Barton v. Utah Transit Auth.*, 872 P.2d 1036, 1039 n. 5 (Utah 1994) (citation omitted).

10. This case is typical of those in which Rule 41(a)(1) is used in that the petitioner refiled the case. "[M]ost voluntary dismissals do not actually terminate the litigation, but result in their renewal at another time and place. This phenomenon is anticipated and encouraged by Rule 41(a), which provides that a voluntary dismissal, whether by notice, stipulation or court order, will be without prejudice to further litigation." 8 James W. Moore, *Moore's Federal Practice* § 41.11, at 41–20 (3d ed.1997).

However, a remote possibility exists that a petitioner in a case like this will not refile. That would place the petitioner in the same legally precarious situation as if he or she had not filed for adoption as required by statute in the first place. *See Barton*, 872 P.2d at 1039 ("[A] voluntary dismissal without prejudice 'render[s] the proceedings a nullity and leave[s] the parties as if the action had never been brought.' " (quoting *In re Piper Aircraft Distrib. Sys. Antitrust Litig.*, 551 F.2d 213, 219 (8th Cir.1977))). Luckily, the great majority of prospective adoptive parents seem highly motivated to legalize their relationships with their prospective adoptive children as quickly as possible to escape legal uncertainty, ensuring permanency and resisting potential attack.

Our examination of the adoption statute does not reveal what state action, if any, would be triggered if a prospective adoptive parent did not file a petition as required by the statute. Perhaps the Legislature has implicitly decided that the specter of legal limbo is sufficient motivation. The statute does allow "[a]ny interested party" to "petition the court for a determination of the rights and interests of any person who may claim an interest in a child under this chapter, at any time prior to the filing of a petition for adoption, including any time prior to the child's birth." Utah Code Ann. § 78–30–4.24 (1996).

¶ 21 Judge Anderson's final concern is that, without the time limit tied to the involvement of an adverse party, "a petitioner would have the right to voluntarily withdraw a petition up until the time that a final decree is issued." However, because of other limits on the use of Rule 41(a)(1) in adoption proceedings, the lack of an adverse party once again does not render the rule clearly inapplicable to adoption proceedings.

 ¶ 22 First, as we have already noted, petitioners are generally driven to reach the end of adoption proceedings as fast as possible. Very few petitioners would likely risk the insecurity of scrapping their efforts in the late stages of adoption proceedings. Second, if a petitioner voluntarily dismisses his or her petition after the thirty-day limit on filing the petition, he or she is taking the ill-advised gamble that the next judge will extend the time for filing. *See* Utah Code Ann. § 78–30–7(2) (Supp.1998).[11] Third, a petitioner may voluntarily dismiss without prejudice only once. *See* Utah R. Civ. P. 41(a)(1). If a petitioner is using Rule 41(a)(1) solely to

seek a sympathetic judge, he or she gets only one chance at it.[12] Even so, another judge—presumably as impartial and reasonable as the last—will preside. A petitioner using Rule 41(a)(1) does not control the proceedings to the extent Judge Anderson seems to fear. Finally, along the same lines, a petitioner might seek to dismiss after getting the inkling that the judge's ruling will be unfavorable. If the judge's ruling would be unfavorable for a legitimate reason (i.e., physical, emotional, or mental danger to the child), DCFS will surely become involved in any case.

 ¶ 23 Accordingly, our analysis of the language and policies underlying Rule 41(a)(1) leads us to conclude that, even if adoption proceedings are "special statutory proceedings" under Rule 81(a), Rule 41(a)(1) is not inherently "clearly inapplicable" to adoption proceedings. Because Thiele's voluntary dismissal has not been attacked on any other basis, we conclude it was valid upon being filed. *See Randle v. Sarfan*, Nos.

---

11. Judge Anderson raises the legitimate concern that after a Rule 41(a)(1) dismissal, a party to an adoption could try to use the savings statute to evade certain statutory deadlines, endangering some of the policies underlying the adoption statute—e.g., permanent and stable relationships. The savings statute states:

> If any action is commenced within due time and a judgment thereon for the plaintiff is reversed, or if the plaintiff fails in such action or upon a cause of action otherwise than upon the merits, and the time limited either by law or contract for commencing the same shall have expired, the plaintiff, or if he dies and the cause of action survives, his representatives, may commence a new action within one year after the reversal or failure.

Utah Code Ann. § 78–12–40 (1996).
In this case, Thiele did not file her petition in Third District Court until after the thirty-day deadline. *See id.* § 78–30–7 (Supp.1998). She thus could have tried to justify refiling later by using the savings statute. She could have argued that the savings statute gave her a year to refile from the date upon which she filed her dismissal notice. However, Thiele instead chose to move the Third District Court for an extension under section 78–30–7(2). *See id.* This case thus does not require us to decide whether the savings statute can be used to trump the thirty-day limit imposed by section 78–30–7(2). *See id.* We leave that question for another day.
The potential havoc to be wrought by the savings statute was one factor persuading the Arkan-

sas Supreme Court to hold that parties to adoptions may not use Rule 41(a)(1) to voluntarily dismiss their actions. *See In re Adoption of Baby Boy Martindale*, 327 Ark. 685, 940 S.W.2d 491, 494 (1997). However, we are unpersuaded by that court's logic and believe the court need not have gone so far as to altogether discard the rules of civil procedure and Rule 41(a)(1) for use in adoption proceedings. The court could have instead dealt head-on with the conflict between the savings statute and the specific deadlines fixed by the adoption statute.

12. "Courts have allowed dismissals even where there is evidence that plaintiffs are attempting to avoid litigation in a particular forum or otherwise engage in forum shopping." *Merit Ins. Co. v. Leatherby Ins. Co.*, 581 F.2d 137, 144 n. 8 (7th Cir.1978); *see also* 8 Moore, *supra*, § 41–11, at 41–20 ("Voluntary dismissals are also employed for reasons of forum shopping."). As one commentator has stated: "A plaintiff's motive for dismissal is generally irrelevant where the dismissal is effected by notice in the early stages of the litigation." 8 Moore, *supra*, § 41.11, at 41–24; *see also* 24 Am.Jur.2d *Dismissal, Discontinuance, and Nonsuit* § 14 (1998) ("The plaintiff's purpose in seeking a dismissal is not ordinarily a material factor in determining whether the case will be dismissed, because the plaintiff's right to dismiss an action voluntarily before a particular stage in the proceedings is an 'absolute right,' even though that right may be subject to abuse.").

C93–1927 VRW, C93–1928 VRW, 1994 WL 36907, at *1, 1994 U.S. Dist. LEXIS 803, at *1 (N.D.Cal. Jan. 31, 1994) ("No court order is required. Plaintiff's notice of dismissal is effective by itself to terminate the action."); *Green v. Nevers,* No. 92–CV–76881–DT, 1993 U.S. Dist. LEXIS 7348, at *23 (E.D. Mich. Apr. 13, 1993) (stating "Rule 41(a)(1) is 'self-executing' ").

## II. Judge Anderson's Jurisdiction

 ¶ 24 The above analysis controls the lingering jurisdictional question. Thiele's valid voluntary dismissal under Rule 41(a)(1) renders the proceedings in Seventh District Court " 'a nullity' "—it is as though " 'the action had never been brought.' " *Barton v. Utah Transit Auth.,* 872 P.2d 1036, 1039 (Utah 1994) (quoting *In re Piper Aircraft Distrib. Sys. Antitrust Litig.,* 551 F.2d 213, 219 (8th Cir.1977)). When a petitioner has properly complied with Rule 41(a)(1), "no case in controversy exists any longer and, hence, the court would lack jurisdiction to proceed any further with the action." *Green v. Nevers,* No. 92–CV–76881–DT, 1993 U.S. Dist. LEXIS 7348, at *23 (E.D. Mich. Apr. 13, 1993). Consequently, we conclude Judge Anderson lost jurisdiction over Thiele's adoption petition on the date she filed her dismissal notice. We therefore vacate his subsequent order.

## CONCLUSION

¶ 25 We conclude that the Utah Rules of Civil Procedure generally apply in adoption proceedings. Likewise, we conclude that petitioners in adoption proceedings may use Rule 41(a)(1) to voluntarily dismiss an uncontested adoption petition. Finally, we conclude Judge Anderson's jurisdiction over Thiele's adoption petition ended when she filed her notice of voluntary dismissal. Judge Anderson thus incorrectly purported to deny Thiele her right to voluntarily dismiss her adoption petition in Seventh District Court and to maintain jurisdiction over the petition.

13. Based on our disposition of this case, we need not address Thiele's assertion that Judge Anderson violated the Code of Judicial Conduct

¶ 26 Accordingly, we award Thiele extraordinary relief under Utah Rule of Civil Procedure 65B(d) because Judge Anderson "has exceeded [his] jurisdiction." Utah R. Civ. P. 65B(d)(2)(A). It is hereby ordered that Thiele's notice of dismissal under Rule 41(a)(1) is valid. Further, it is hereby ordered that Judge Anderson was without jurisdiction over Thiele's petition as of September 3, 1998, and his September 16, 1998 order is vacated.[13]

¶ 27 I CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge.

¶ 28 I CONCUR IN THE RESULT: GREGORY K. ORME, Judge.

by showing inappropriate bias toward her, an unmarried adoption petitioner.