2011 UT App 149

COLONIAL BUILDING SUPPLY, LLC, Plaintiff,

v.

CONSTRUCTION ASSOCIATES, INC., dba KRT Drywall; Bud Bailey Construction, Inc.; Layton Pointe, LC; and John Does 1–10, Defendants.

Bud Bailey Construction, Inc., Cross-claimant, Third-party Plaintiff, and Appellee,

v.

Construction Associates, Inc., separately and dba KRT Drywall; and William Kim Pitcher, Cross-claim Defendants and Third-party Defendant,

and

Cache Valley Bank, Garnishee and Appellant.

No. 20100463–CA.

Court of Appeals of Utah.

May 12, 2011.

N. George Daines, Logan, for Appellant.

Robert F. Babcock and Cody W. Wilson, Salt Lake City, for Appellee.

Before Judges DAVIS, ORME, and ROTH.

## OPINION

DAVIS, Presiding Judge:

¶ 1 Cache Valley Bank (the Bank) appeals the trial court's award of $17,901.94 plus attorney fees and costs to Bud Bailey Construction, Inc., (Bud Bailey) to compensate for the Bank's failure to correctly answer a garnishment interrogatory. We reverse and remand.

## BACKGROUND

¶ 2 On April 3, 2006, Bud Bailey obtained a judgment against Construction Associates, Inc., in the amount of $46,919.79. On November 1, 2006, Bud Bailey served a writ of garnishment on an administrative assistant at the Bank.[1] The writ was accompanied by interrogatories that provided space for the Bank's responses. The Bank's answers, which were filed with the court on November 8, 2006, indicated that the Bank held $17,901.94 in Construction Associates' checking account. One of the interrogatories stated, "You may deduct from the amount to be withheld money owed to you by the defendant or the plaintiff, if the amount is not disputed. If you make this deduction, state the amount deducted and the name of the person indebted to you." The space for the Bank's answer to this question was left blank.

¶ 3 Pursuant to rule 64D of the Utah Rules of Civil Procedure and the court's instructions in the writ of garnishment, the Bank was responsible to deliver the funds to Bud Bailey if it did not receive a request for hearing from Construction Associates within twenty days. *See* Utah R. Civ. P. 64D(i). When Bud Bailey had not received the funds by January 25, 2007, the trial court issued a Garnishee Order to Show Cause in re Contempt for the Bank's failure to comply with the writ.

¶ 4 In a telephone conference held February 12, 2007, the Bank's counsel informed Bud Bailey and the trial court that the Bank had placed a lien on the funds and that it would thereafter provide the court with a "proper response to the garnishment." On February 26, 2007, the day of the hearing on the order to show cause, the Bank filed its Response to Garnishment and Order to Show Cause in re Contempt, claiming a right to offset the funds to satisfy over $300,000 in outstanding loans made by the Bank to Construction Associates and providing documents evidencing its security interest in the checking account. The court continued the hearing to April 2, 2007. Bud Bailey subsequently discovered that Construction Associates had deposited additional funds into its checking account after the writ of garnishment was issued and that the Bank had

---

1. The Bank maintains that the service was improper because the writ should have been served on the Bank's legal counsel, who is its designated agent. While the Bank concedes that it waived improper service as a defense to the garnishment, we previously acknowledged that if the improper service contributed to the error in the interrogatory it might mitigate the Bank's liability. *See Colonial Bldg. Supply, LLC v. Construction Assocs., Inc.,* 2008 UT App 436, ¶ 2 n. 2, 198 P.3d 1017. *But see infra* note 5.

permitted Construction Associates to draw on those funds.

¶ 5 In an order issued May 9, 2007, the trial court found that the Bank "was not in compliance with the garnishment statute as required by Rule 64[D] of the Utah Rules of Civil Procedure, in that it failed to provide any notice of an offset or right to offset within the required time period." The court further found that the Bank violated an order of the court contained in the writ by allowing checks drawn on funds deposited after the writ of garnishment was issued to clear rather than using them to pay the garnishment. As a result, the trial court ordered the Bank to pay the entire sum remaining on the garnishment, $38,769.71, as well as Bud Bailey's attorney fees.

¶ 6 The Bank appealed, conceding that it had erred by failing to claim the offset in its response to the interrogatories but arguing that the writ of garnishment did not apply to the after-deposited funds. *See Colonial Bldg. Supply, LLC v. Construction Assocs., Inc.,* 2008 UT App 436, ¶ 7, 198 P.3d 1017. This court agreed, holding that "the Writ of Garnishment only had effect with regard to the funds that were held by the Bank at the time the Writ was served." *Id.* ¶ 8. However, we remanded with instructions for the trial court to make "a determination of what amount, if any, Bank should be required to pay solely for its failure to answer adequately the interrogatory served with the Writ." *Id.* ¶ 10. We also instructed that, pursuant to rule 64D(j)(2) of the Utah Rules of Civil Procedure, the amount awarded should not exceed the amount held by the Bank when the writ was served, i.e., $17,901.94, plus reasonable attorney fees and costs if appropriate. *See id.* ¶ 9; *see also* Utah R. Civ. P. 64D(j)(2).

¶ 7 On remand, the trial court found that the Bank had "failed to provide any adequate justification for its failure to properly respond to Bud Bailey's garnishment interrogatory regarding the offsets." The trial court found that "the just amount to assess against [the Bank] for its failure is the full amount that it held for Construction Associates at the time Bud Bailey served its writ of garnishment, i.e. $17,901.94, plus Bud Bai-

ley's reasonable attorney[ ] fees and costs." After receiving an affidavit of Bud Bailey's attorney fees and considering the Bank's objections to it, the trial court approved an attorney fee award of $8,500.70. The Bank appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 8 First, the Bank argues that the trial court did not correctly analyze its liability under rule 64D of the Utah Rules of Civil Procedure. "We review the trial court's interpretation of law for correctness." *Ledfors v. Emery Cnty. Sch. Dist.,* 849 P.2d 1162, 1162–63 (Utah 1993); *see also Thiele v. Anderson,* 1999 UT App 56, ¶ 11, 975 P.2d 481 (reviewing the trial court's interpretation of rules of civil procedure for correctness).

¶ 9 The Bank further argues that the trial court's factual findings were inadequate to justify the award to Bud Bailey. "Questions about the legal adequacy of findings of fact ... present issues of law, which we review for correctness, according no deference to the trial court." *Mardanlou v. Ghaffarian,* 2006 UT App 165, ¶ 8, 135 P.3d 904 (internal quotation marks omitted), *overruled on other grounds by Ellsworth Paulsen Constr. Co. v. 51–SPR–LLC,* 2008 UT 28, ¶ 15 n. 2, 183 P.3d 248.

¶ 10 Finally, the Bank argues that under rule 64D(j)(2), Bud Bailey was entitled only to attorney fees incurred up to the time when the Bank informed Bud Bailey of the error in the interrogatory and that any fees subsequent to that time could not have been the result of the Bank's error. The "[c]alculation of reasonable attorney fees is in the sound discretion of the trial court, and will not be overturned in the absence of a showing of a clear abuse of discretion." *Dixie State Bank v. Bracken,* 764 P.2d 985, 988 (Utah 1988) (citation omitted).

## ANALYSIS

¶ 11 Rule 64D(j)(2) of the Utah Rules of Civil Procedure, upon which the trial court's order is premised, limits the circumstances where a garnishee may be held liable for garnished sums. *See* Utah R. Civ. P. 64D(j)(2). Both the trial court and the par-

ties appear to have misconstrued the effect of this rule by characterizing it as a provision for sanctions against an offending party.[2] Specifically, in its order on remand, the trial court stated that it believed the Bank's faulty interrogatory answer justified the court's imposition of "the most severe *penalty* authorized under Utah law." (Emphasis added.) The implication of this statement, and of the fact that the trial court made no findings as to damages incurred by Bud Bailey as a result of the Bank's actions, *see infra* ¶ 15, is that the trial court believed it was sanctioning the Bank rather than assessing the Bank's liability for damages.[3]

■ ¶ 12 "[R]ule 64D is designed to facilitate collection and should not be used to place undue burdens or risks on garnishees...." *Whitney v. Faulkner*, 2004 UT 52, ¶ 19, 95 P.3d 270; *see also Pangea Techs., Inc. v. Internet Promotions, Inc.*, 2004 UT 40, ¶ 6, 94 P.3d 257 (observing that because "[a] garnishee is a stranger to the principal case and an involuntary participant in the garnishment proceeding," "heightened sensitivity" should be given to the garnishee's due process rights). Accordingly, rule 64D provides that "[a] garnishee who acts in accordance with [rule 64D], the writ or an order of the court is released from liability, unless

answers to interrogatories are successfully controverted." Utah R. Civ. P. 64D(j)(1). However, a garnishee who fails to so act may be subject to liability, as outlined in subsection (j)(2) of rule 64D:

> If the garnishee fails to comply with [rule 64D], the writ or an order of the court, the court may order the garnishee to appear and show cause why the garnishee should not be ordered to pay such amounts as are just, including the value of the property or the balance of the judgment, whichever is less, and reasonable costs and attorney fees incurred by parties as a result of the garnishee's failure. If the garnishee shows that the steps taken to secure the property were reasonable, the court may excuse the garnishee's liability in whole or in part.

*Id.* R. 64D(j)(2).

■ ¶ 13 While "such amounts as are just" are not explicitly limited to amounts reflecting the garnishee's liability, it is clear from the context of this provision that actual liability for damages rather than punitive sanctions is provided for in this rule.[4] *See generally Estate of Berkemeir ex rel. Nielsen v. Hartford Ins. Co. of the Midwest*, 2004 UT 104, ¶ 13, 106 P.3d 700 (holding that a phrase should be interpreted consistent with the

---

**2.** The Bank's argument prescribes a complicated analysis of its liability, which includes an evaluation of whether the Bank's actions were contemptuous. However, because any assessment against the Bank under rule 64D(j)(2) cannot be properly characterized as a sanction, the Bank's arguments regarding contempt are irrelevant to our analysis.

**3.** In several instances, the trial court characterized its finding against the Bank as one of contempt. However, the trial court analyzed the Bank's actions under rule 64D(j), which outlines rules regarding garnishee liability, not contempt. *See* Utah R. Civ. P. 64D(j). And even had the trial court intended the assessment against the Bank to be a sanction for contempt, an award of damages would be appropriate only if Bud Bailey had sustained "an actual loss or injury" as a result of the contempt. *See* Utah Code Ann. § 78B–6–311 (2008); *see also infra* ¶ 15 (observing that the trial court made no findings regarding any actual injury or loss sustained by Bud Bailey).

**4.** In its order on remand, the trial court relied on the supreme court's holding in *Whitney v. Faulk-*

*ner*, 2004 UT 52, 95 P.3d 270, to support the conclusion that penalties against a garnishee may be appropriate when the "garnishee becomes unduly partisan, or otherwise obstructs the process" of collection. *See id.* ¶ 19. However, what the case actually holds is that the trial court can award "prejudgment interest" in such circumstances. *See id.* Prejudgment interest is not a penalty but is simply a principle of law by which a party may recover interest for overdue debts. *See id.* ¶ 17 (citing *Wasatch Mining Co. v. Crescent Mining Co.*, 7 Utah 8, 24 P. 586, 587 (1890)). Garnishees are generally exempt from paying prejudgment interest, even when their payment of the garnishment amount is delayed as a result of their asserting an interest in the garnished funds, because of the policy that rule 64D should not "place undue burdens or risks on garnishees." *See id.* ¶¶ 17–19. The holding in *Whitney* merely acknowledges that a garnishee who has removed itself from the position of neutrality that a garnishee usually occupies need not be permitted to benefit from the general prejudgment interest exemption enjoyed by garnishees. It does not pave the way for trial courts to impose monetary penalties of the type the trial court attempted to impose here.

context of the statute in which it is contained); *Calhoun v. State Farm Mut. Auto. Ins. Co.*, 2004 UT 56, ¶ 18, 96 P.3d 916 ("[W]hen deciding questions of statutory interpretation we do not look to language in isolation. Rather, we look first to the statute's plain language, in relation to the statute as a whole, to determine its meaning."). Subsection (j), which contains the relevant provision, is titled "Liability of garnishee." *See* Utah R. Civ. P. 64D(j). Furthermore, subsection (j)(2) immediately follows a provision limiting the liability of a garnishee, *see id.* R. 64D(j)(1), and is qualified by a caveat permitting the court to "excuse the garnishee's *liability* in whole or in part" under certain circumstances, *see id.* R. 64D(j)(2) (emphasis added), implying that liability is the basis on which an assessment against the garnishee is to be made. This interpretation of the rule is also consistent with the general policy that rule 64D should not "place undue burdens or risks on garnishees," *see Whitney*, 2004 UT 52, ¶ 19, 95 P.3d 270. Thus, to the extent that the assessment the trial court made against the Bank may be characterized as a penalty rather than as an assessment of liability, it was improperly imposed.

■ ¶ 14 Because the assessment permitted by rule 64D(j)(2) is not a penalty, it must reflect damages actually stemming from the Bank's error. To assess liability to the Bank for the full amount of the funds held when the Bank's error did not actually prejudice or damage Bud Bailey in some way would give Bud Bailey a windfall by awarding it funds it would never have been entitled to in the absence of the error. This is not to say that such an assessment might not have been proper under the right circumstances. In-

deed, rule 64D(j)(2) explicitly authorizes trial courts to hold garnishees liable for "the value of the property or the balance of the judgment, whichever is less," Utah R. Civ. P. 64D(j)(2), and we reaffirmed that prerogative in the previous appeal, *see Colonial Bldg. Supply, LLC v. Construction Assocs., Inc.*, 2008 UT App 436, ¶ 9, 198 P.3d 1017. However, such an assessment must be supported by factual findings demonstrating that it "follows logically from, and is supported by, the evidence." *Acton v. Deliran*, 737 P.2d 996, 999 (Utah 1987) (internal quotation marks omitted). If the trial court fails to make findings that are "sufficiently detailed and include enough subsidiary facts to disclose the steps by which" the assessment was made, its failure "is reversible error unless the facts in the record are clear, uncontroverted, and capable of supporting only a finding in favor of the judgment." *Id.* (internal quotation marks omitted).[5]

¶ 15 The trial court made no factual findings respecting any damage suffered by Bud Bailey as a result of the Bank's error in not answering the one interrogatory. Rather than focusing on the effect of the Bank's error, the trial court focused on the Bank's failure to justify that error. The court's decision essentially held that any error that is the fault of the garnishee may be summarily penalized by a monetary sanction of any amount held by the garnishee, no matter how egregious the error, how large the amount held, or how minor the effect of the error on the judgment creditor. In this case, had the Bank correctly given notice of its offset in the interrogatories, Bud Bailey would have had no further claim to the $17,901.94. It is unreasonable to interpret rule 64D(j)(2) to

---

5. In the previous appeal, we stated that the trial court could consider the effect of Bud Bailey's allegedly improper service in determining the amount the Bank should be required to pay. *See Colonial*, 2008 UT App 436, ¶ 2 n. 2, 198 P.3d 1017. The Bank argues again on appeal that its liability should have been offset by some factor reflective of the improper service. However, the trial court considered this matter on remand and found that the Bank had "not presented any evidence to tie its failure to properly respond to Bud Bailey's garnishment" to the allegedly improper service, despite the fact that the trial court had given the Bank the opportunity to do so on multiple occasions. The Bank does not

contradict this finding but instead asserts that "[i]t is self-evident that improperly served interrogatories are likely to lead to improper responses." However, the generalized likelihood of such an outcome is not a sufficient basis for concluding that such an outcome actually occurred. We therefore decline to disturb the trial court's finding on this issue and consider settled the matter of whether the deficiency in the service of process played some role in the Bank's error. *See generally Dansie v. Hi–Country Estates Homeowners Ass'n*, 2004 UT App 149, ¶ 7, 92 P.3d 162 ("We review all findings of fact for clear error, granting the district court deference in its review of the evidence." (citing Utah R. Civ. P. 52(a))).

entitle Bud Bailey to that very sum in the face of a minor error that was corrected within a relatively short period of time unless Bud Bailey actually suffered a detriment as a result of that error.[6] Because the trial court made no findings to that effect, the $17,901.94 assessment against the Bank must be reversed and this case remanded for adequate findings in support of whatever amount the trial court determines is proper, consistent with the direction given in this opinion.

¶ 16 The Bank next contests the trial court's award of attorney fees to Bud Bailey. Under rule 64D(j)(2), Bud Bailey is entitled to recover "reasonable costs and attorney fees incurred . . . as a result of the garnishee's failure." Utah R. Civ. P. 64D(j)(2). Thus, the trial court must find (1) that the claimed costs and fees are reasonable and (2) that the fees were incurred as a result of the garnishee's failure to comply with the rule. The Bank argues that the only attorney fees that can properly be deemed to have resulted from the Bank's error are those incurred prior to February 2006, when the Bank informed Bud Bailey of its right to offset. We disagree. The litigation stemming from the Bank's error has continued to the present day, and much of that litigation is related to Bud Bailey's proper pursuit of a remedy against the Bank. Furthermore, as Bud Bailey is entitled to recover "fees incurred . . . as a result of the garnishee's failure," *id.*, it is conceivable that Bud Bailey could be entitled to at least some fees on appeal to the extent that those fees were reasonable and incurred as a result of the Bank's error.[7]

¶ 17 We are in agreement that the trial court, on remand, should consider the amount of fees to which Bud Bailey may be entitled on appeal. However, I disagree with the majority of the panel that it is necessary for the trial court to reconsider the attorney fees already awarded. *See infra* ¶ 19. An award of attorney fees should be reviewed for abuse of discretion. *See Dixie State Bank v. Bracken*, 764 P.2d 985, 988 (Utah 1988). The Bank's argument on appeal regarding attorney fees was limited to a general argument that all of the line items claimed by Bud Bailey occurring subsequent to February 2006 were unrelated to the Bank's error. As we have rejected that argument, all that remains, in my opinion, is to determine whether the trial court abused its discretion in awarding the fees it did. Because the Bank has neither challenged the connection between the Bank's error and any of the specific line items approved by the trial court nor argued that the amount of the claimed fees was unreasonable, I do not think the Bank has provided us with a basis for concluding that the award of attorney fees was an abuse of discretion. I am also concerned with the precedent created by the panel's decision to remand the attorney fee award based on an assumption that the award was tainted by the trial court's erroneous application of rule 64D in assessing damages. In my opinion, the two issues are separate and should be considered separately. Therefore, I would affirm the trial court's award of attorney fees.

## CONCLUSION

¶ 18 The trial court erred in assessing a penalty against the Bank for its failure to correctly answer the interrogatory. Furthermore, the trial court made no factual findings to support an assessment of liability against the Bank for any amount beyond the attorney fees incurred as a result of the Bank's error. Finally, an appropriate award of attorney fees to Bud Bailey was not limit-

---

**6.** For example, the Bank could have been held liable for its error if Bud Bailey had presented evidence that it lost an opportunity to pursue further writs of garnishment that it would have sought had it known it would not be receiving the funds from Construction Associates' account at the Bank.

**7.** This is not to say that a party should be awarded attorney fees to compensate for its frivolous pursuit of remedies to which it is not entitled. Such fees would be unreasonable and could not be deemed to have resulted from the garnishee's failure to comply with rule 64D. Although we overturn the $17,901.94 penalty because it was not supported by sufficient findings, we do not think that Bud Bailey's pursuit of that remedy was necessarily unreasonable. We therefore leave it to the trial court to determine the extent to which Bud Bailey may be reimbursed for its fees on appeal under rule 64D(j)(2) on the rationale that they were attributable to the Bank's error.

ed to fees incurred before the Bank informed Bud Bailey of its error. We reverse and remand for the trial court to conduct a new evidentiary hearing to determine the amount of damages, if any; to reassess the award of attorney fees; and to determine the appropriate amount of attorney fees to which Bud Bailey is entitled on appeal.

ORME, Judge (concurring and dissenting):

¶ 19 I concur in the lead opinion except its treatment of attorney fees. With respect to that part of the opinion, I dissent. And because Judge Roth has concurred in my opinion, this opinion—not the lead opinion—represents the opinion of the court as concerns attorney fees.

¶ 20 Our concern may be simply stated. The district court awarded Bud Bailey the maximum amount permitted by our prior opinion. And it awarded essentially the entire amount sought by Bud Bailey in its fee application. Concerned that the trial court might have used an improper sanction-oriented approach in fixing the bank's basic liability, we have vacated that award and remanded for reconsideration. Because the basic award is being reconsidered, it makes sense to us for the trial court to likewise reconsider the award of attorney fees—if for no other reason than to ensure that the fee award is untainted by the same sanction-based approach that prompts us to vacate the judgment imposed.[1]

¶ 21 Accordingly, on remand, the trial court will also reconsider the amount of attorney fees properly to be awarded against the Bank.

¶ 22 I CONCUR: STEPHEN L. ROTH, Judge.

---

1. Contrary to the lead opinion's criticism, we make no "assumption that the [fee] award was tainted by the trial court's erroneous application of rule 64D in assessing damages." *Supra* ¶ 17.

We merely recognize the possibility, and believe the trial court should have the opportunity to reconsider the fee award as it reconsiders the damages award.