**Della Fuit KYNASTON, as personal representative of the estate of Alden Kynaston, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 82–2082.

United States Court of Appeals, Tenth Circuit.

Sept. 16, 1983.

George E. Mangan, Roosevelt, Utah (Marden G. Dixon and Al Baker of Marden G. Dixon, P.C., Provo, Utah, with him on the brief), for plaintiff-appellant.

Ralph Johnson, Asst. U.S. Atty., Salt Lake City, Utah (Brent D. Ward, U.S. Atty., and Lawrence J. Leigh, Asst. U.S. Atty., Salt Lake City, Utah, with him on the brief), for defendant-appellee.

Before BARRETT, McKAY and LOGAN, Circuit Judges.

BARRETT, Circuit Judge.

Della Fuit Kynaston appeals from the district court's grant of summary judgment in favor of the United States, appellee. After finding that appellant's husband, Alden Kynaston, contracted Guillain-Barre Syndrome (GBS) from a swine flu vaccination he received as part of a government sponsored immunization program, the court awarded recovery of $868.81.[1] The court based its judgment on Utah's survival statute, Utah Code Annot., § 78–11–12 (Supp. 1977), which limits recovery to out-of-pocket expenses when the injured party dies of an intervening cause. Alden Kynaston died of cancer prior to resolution of this suit. On appeal, appellant contends that the dis-

trict court improperly applied the Utah statute retroactively. We reverse.[2]

Alden Kynaston received a swine flu vaccination on December 9, 1976 and within three days began experiencing symptoms of GBS. On January 24, 1977, he was diagnosed by his family physician, who administered the vaccination, as having a "GBS-like" disorder. Although a neurologist examined Mr. Kynaston on February 21, 1977 and determined that he was probably recovering from GBS, Mr. Kynaston's condition continued to worsen through April.[3] On January 1, 1978, Mr. Kynaston filed an administrative claim with the United States in accordance with the procedures established for personal injury claims arising out of the National Swine Flu Immunization Program of 1976, 42 U.S.C. § 247b(j)–(l) (1976) (Swine Flu Act).[4] Ten months later, when no administrative action had been taken on his claim, Mr. Kynaston filed suit against the United States in the District Court for the District of Utah. Under the provisions of the Swine Flu Act, all suits for injuries due to the swine flu vaccine must be brought against the United States under the procedures of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* (FTCA). Mr. Kynaston correctly filed his claim under the FTCA. Within two months his case was transferred to the District Court for the District of Columbia by the Judicial Panel on Multidistrict Litigation for its pretrial proceedings on swine flu

1. Guillain-Barre Syndrome is a neurological disorder of unknown causes.

2. Appellant also contends that, if the district court did not apply the statute retroactively, then the court's interpretation of "out-of-pocket" expenses was too restrictive and not in accordance with the purpose and intention of the Utah legislature. Because we hold that the statute was applied retroactively, it is unnecessary to address appellant's second issue.

3. The testimony was uncontroverted that prior to the immunization, Mr. Kynaston was a healthy, strong, hard-working and robust individual. However, immediately following the vaccination, he began to suffer from numbness, severe pain and muscle weakness in his lower extremities. He experienced cold sweats, sen-

sitivity to changes in temperatures, and difficulty walking. He seldom left home and did no work on his farm. By March 1977, his neck size had decreased from 17½ inches to 15 inches and his waist had diminished from 42 inches to 36 inches.

4. For a detailed discussion of the history of the Swine Flu Act and the litigation it has generated, see *Hunt v. United States,* 204 U.S.App.D.C. 308, 636 F.2d 580 (1980); *Sparks v. Wyeth Laboratories,* 431 F.Supp. 411 (W.D.Okl.1977), aff'd. per curiam, # 77–1407 (10th Cir. Dec. 22, 1978) (unpublished opinion); *Alvarez v. United States,* 495 F.Supp. 1188 (D.Colo.1980). For cases awarding damages under the Swine Flu Act, see *inter alia, Overton v. United States,* 619 F.2d 1299 (8th Cir.1980); *Draisma v. United States,* 492 F.Supp. 1317 (W.D.Mich.1980).

immunization litigation.[5] Mr. Kynaston's case remained with the panel until March 12, 1980, when the pretrial proceedings were completed. Mr. Kynaston's case was then remanded to the District Court for the District of Utah for local discovery and trial. Mr. Kynaston did not live to see the remand of his case. He died of cancer five months earlier, on November 6, 1979.

The district court *sua sponte* named appellant as personal representative of her husband's estate. Fed.R.Civ.Pro. 25(a). The case then went to trial on the issues of whether Mr. Kynaston had suffered from GBS and, if so, whether he contracted the disease when he received his swine flu vaccination. The trial court found the causal link, and the case was continued for a determination of damages. On July 29, 1982, the court granted the government's motion for a summary judgment limiting appellant's recovery to out-of-pocket expenses because her husband died of an intervening cause prior to judgment. The court based its ruling on Utah's survival statute as amended in 1977. Utah Code Annot. § 78–11–12 (Supp.1977).

The issue before this court is whether the trial court erred when it applied Utah's survival statute as amended in 1977 rather than the 1975 version. The earlier statute was in effect when Mr. Kynaston received his injection in 1976 and, if applicable, could entitle his estate to a greater recovery than it received under the later statute.

■ First, we must determine when the cause of action for this personal injury action accrued to Mr. Kynaston. As noted above, the Swine Flu Act provides that claims for injuries due to a swine flu vaccination must be brought against the United States under the procedures of the FTCA.

42 U.S.C. § 247b(k)(2)(A). Therefore, the determination of when a claim, or cause of action, accrues is a matter of federal, not state, law. *Exnicious v. United States,* 563 F.2d 418, 420 (10th Cir.1977). See also *Garrett v. United States,* 640 F.2d 24 (6th Cir. 1981); *Ware v. United States,* 626 F.2d 1278 (5th Cir.1980); *Ciccarone v. United States,* 486 F.2d 253 (3rd Cir.1973). Under the FTCA a cause of action accrues at the time the plaintiff is injured, or, in a medical malpractice action, when the plaintiff has discovered both his injury and its cause. *United States v. Kubrick,* 444 U.S. 111, 120, 100 S.Ct. 352, 358, 62 L.Ed.2d 259 (1979). Once the cause of action accrues, the right to compensation and its measure will not be affected by subsequent legislation absent a clear legislative intent that the subsequent legislation be given retroactive effect. *Greene v. United States,* 376 U.S. 149, 160, 84 S.Ct. 615, 621, 11 L.Ed.2d 576 (1964); *City & County of Denver v. Bergland,* 695 F.2d 465, 481 (10th Cir.1982). As the Supreme Court observed in *Greene:*

> As the Court said in *Union Pac. R. Co. v. Laramie Stock Yards Co.,* 231 U.S. 190, 199, 34 S.Ct. 101, 102, 58 L.Ed. 179, "the first rule of construction is that legislation must be considered as addressed to the future, not to the past ... [and] a retrospective operation will not be given to a statute which interferes with antecedent rights ... unless such be 'the unequivocal and inflexible import of the terms, and the manifest intention of the legislature.' "

376 U.S. at 160, 84 S.Ct. at 621–22 (footnote omitted). As the district court found, Mr. Kynaston received his swine flu vaccination on December 9, 1976, and symptoms of his vaccination-induced GBS began to appear

---

**5.** Tort actions filed against the United States based on claims arising from the Swine Flu Act were consolidated by the Judicial Panel on Multi-District Litigation for coordinated pretrial procedures. 28 U.S.C. § 1407. The panel's final pretrial order provided, *inter alia,* that plaintiffs who demonstrate that they contracted GBS as a proximate result of their swine flu vaccination would not be required to demonstrate any theory of liability. See *Lima v. United States,* 708 F.2d 502, 503 (10th Cir.1983);

Stipulation and Final Pretrial Order, Para. IX, *In Re Swine Flu Immunization Products Liability Litigation,* 559 F.Supp. 429 (D.D.C.1979). Prior to determining damages in this case, the trial judge filed a detailed Memorandum, Opinion, and Order in which he found that Alden Kynaston suffered from GBS as a proximate result of a swine flu vaccination he received pursuant to the Swine Flu Act. The government did not challenge those findings.

approximately three days later. On January 24, 1977, Mr. Kynaston's family physician diagnosed that Mr. Kynaston had a "GBS-like" disorder. On February 21, 1977, a neurologist examined Mr. Kynaston and determined that he was probably recovering from GBS. Therefore, Mr. Kynaston's cause of action accrued at the earliest on December 9, 1976, and at the latest on February 21, 1977. The 1977 amendment to Utah Code Annot. § 78–11–12 did not become effective until May 10, 1977. 1977 Laws of Utah, Chapter 139. Thus, Mr. Kynaston's cause of action against the United States accrued prior to the effective date of the 1977 amendment of Utah's survival statute.

Although this case concerns Utah's survival statute and does not address the issue of wrongful death, it is necessary to discuss briefly the development of Utah's wrongful death statute, from which the state's survival statute evolved. At common law, any action in tort for a personal injury dies with the deceased. If the injured person dies, his estate cannot recover from the wrongdoer for its losses due to the injury. Furthermore, his heirs cannot recover from the wrongdoer for any loss they suffer on account of the decedent's death.[6] Utah, in enacting a wrongful death statute, provided a cause of action for compensation to those persons injured by the wrongful death of the deceased.[7] The cause of action which arises pursuant to the wrongful death statute accrues to the heirs or personal representatives of the deceased, and for their benefit, but not to the deceased or his estate. The liability created by the wrongful death statute is against the wrongdoer for injuries suffered by the parents or heirs of the deceased. *Meads v. Dibblee,* 10 Utah 2d 229, 350 P.2d 853, 855 (1960).

Although Utah's wrongful death statute abated the harshness of the common law

rule as it pertained to the heirs of one wrongfully killed, the statute failed to achieve its purpose if the wrongdoer also died before judgment in the case. At common law, actions for personal injury torts similarly do not survive the death of the wrongdoer. *Id.* 350 P.2d at 855. To remedy this defect, Utah enacted its first survival statute in 1953. The purpose of the statute was not to create a new cause of action as the wrongful death statute did, but rather to abrogate the common law rule of abatement and continue or perpetuate ("survive") a cause of action in existence before the wrongdoer's death. The statute read as follows:

> *Causes of action arising out of physical injury to the person or death, caused by the wrongful act or negligence of another, shall not abate upon the death of the wrongdoer,* and the injured person or the personal representatives or heirs of one meeting death, as above stated, shall have a cause of action against the personal representatives of the wrongdoer; provided, however, that the injured person or the personal representatives or heirs of one meeting death shall not recover judgment except upon some competent satisfactory evidence other than the testimony of said injured person. Utah Code Annot. § 78–11–12 (1953). (Emphasis added).

Interestingly, the first case to examine the survival statute did not involve a wrongful death survival action. Rather, *Fretz v. Anderson,* 5 Utah 2d 290, 300 P.2d 642, 649 (1956), concerned a personal injury survival case where the plaintiff received her injury when her car struck an overturned automobile lying in the road. The driver of the overturned car died at the scene, but the time of his death was not determined at the trial. The jury awarded damages to the injured plaintiff. The Utah

---

**6.** For discussion, see Prosser, Torts 4th Ed. § 127 (1971).

**7.** The territorial legislature enacted the first Utah Wrongful Death Statute in 1874. II Compiled Laws of Utah § 2961 (1888). The present Wrongful Death Statute was enacted in 1951

and is codified in two sections: § 78–11–6 deals with the wrongful death of a child, § 78–11–7 covers other wrongful death actions. For discussion of Utah's wrongful death statute, see 1974 Utah L.Rev. 519; 1979 Utah L.Rev. 77.

Supreme Court reversed and remanded the case for a new trial and factual determination of whether the deceased died as a result of the collision or whether he had previously died by overturning his own automobile. The court held that if the deceased died when his car overturned, then the plaintiff had no cause of action for the injury which resulted from the later collision. Liability could not attach after the driver's death. The Utah Supreme Court later refined its ruling when it decided its first wrongful death survival action. *Meads v. Dibblee,* 10 Utah 2d 229, 350 P.2d 853 (1960). *Meads* concerned a wrongful death action filed by the father of a 17-year-old girl who was killed when the automobile she was riding in collided with a tractor trailer. The court held that the father could bring a wrongful death action against the administrator of the estate of the driver of the automobile, notwithstanding that the driver died two weeks before the girl died. The court ruled that the survival statute perpetuates liability which existed at the time of the death of the wrongdoer, and that the heirs of one whose death is caused by wrongful acts of another shall, upon the death of the wrongdoer, have a cause of action for wrongful death against the personal representative of the wrongdoer.

Although *Fretz* and *Meads* dealt with wrongful death and personal injury survival cases, the only issue upon which they focused was whether liability had attached to the deceased wrongdoer. However, the survival statute as it existed at that time, maintained only the liability of the deceased wrongdoer. The statute did not allow for the survival of a cause of action if the plaintiff died. For instance, in *Fretz* the plaintiff's personal injury claim would not have survived under the statute if she had also died prior to judgment, regardless of when the other driver died. Her claim would have been lost forever.[8] Conceivably, a wrongful death action, e.g., *Meads,* would have also abated under the first survival statute if those injured by the wrongful death also died before judgment. Therefore, in 1967, Utah amended its survival statute by extending the provision for nonabatement to the injured person. It read as follows:

> Section 78–11–12 (Supp.1975). Causes of action arising out of the physical injury to the person or death, caused by the wrongful act or negligence of another, shall not abate upon the death of the wrongdoer *or the injured person,* and the injured person or the personal representative or heirs of one meeting death, as above stated, shall have a cause of action *except for claims relating to pain and suffering* against the personal representatives of the wrongdoer; provided, . . . . (Emphasis added).

The amendment allowed that, upon the injured person's death, his claim would become a part of his estate and a personal representative would be appointed to pursue the claim on behalf of the estate. In that manner the decedent's personal injury claim would continue or "survive" his death.[9] Simultaneously, the legislature inserted "except for claims relating to pain and suffering" after "cause of action," thereby limiting the amount of damages an injured person's estate could receive should the injured plaintiff die before judgment.[10]

**8.** Arguably, the heirs of the plaintiff in *Fretz* could have had a wrongful death action if she died from her injuries. However, that would have been a separate and distinct action and would not have derived or "survived" from plaintiff's original personal injury claim.

**9.** *Sea-Land Services, Inc. v. Gaudet,* 414 U.S. 573 n. 2, 94 S.Ct. 806 n. 2, 39 L.Ed.2d 9 (1974); *DeHerrera v. Herrera,* 565 P.2d 479 (Wyo. 1977); Prosser, Torts 4th Ed. § 126 (1971); Speiser, Recovery for Wrongful Death 2d

§ 14:1 (1975); 1 C.J.S. Abatement and Revival § 138 (1948).

**10.** The survival statute as amended in 1967 appears somewhat unclear. When given a literal reading, the statute indicates that if either the wrongdoer or the injured person dies before a judgment is rendered, no damages for pain and suffering may be assessed. However, the legislative history of the statute would indicate that the clause was meant only to apply to the injured person. The sponsor of the amendment stated that "pain and suffering is a personal

The 1967 amended statute was in effect at the time Alden Kynaston's cause of action accrued.[11]

Before proceeding, it would be helpful to reemphasize an important distinction between wrongful death and survival statutes. Because the cause of action which arises pursuant to a wrongful death statute accrues to the heirs or personal representatives of the deceased and for their benefit, any amount recovered from the wrongdoer goes directly to the heirs or personal representatives of the deceased. The recovery does not become a part of the decedent's estate, nor is it liable for any debts of the estate. On the other hand, a survival statute merely maintains an action already in existence. The injured party's claim after his death becomes a part of the estate, and the damages recoverable are only those the injured person might have recovered had he lived. Any funds made available through a recovery belong to the estate for the protection of its creditors and to compensate the estate for losses it has incurred.[12]

Although the 1967 amendment was in effect at the time Alden Kynaston's cause of action accrued, the district court relied on a later amendment to the statute when it awarded damages to Mr. Kynaston's estate. The statute, as amended in 1977, limits recovery to out-of-pocket expenses when the injured person dies of an intervening cause. The amended statute states:

Causes of action arising out of physical injury to the person or death, caused by the wrongful act or negligence of another, shall not abate upon the death of the wrongdoer or the injured person, and the injured person or the personal representatives or heirs of one meeting death, as above stated, shall have a cause of action against the wrongdoer or the personal representatives of the wrongdoer for special and general damages. *However, if prior to judgment or settlement, the injured person dies as a result of some cause other than the injury received as a result of the wrongful act or negligence of the wrongdoer, the personal representatives or heirs of that person shall be entitled to receive no more than the out-of-pocket expenses incurred by or on behalf of that injured person as the result of his injury.* In either event, neither the injured person nor the personal representatives or heirs of one meeting death shall recover judgment except upon some competent satisfactory evidence other than the testimony of that injured person. Utah Code Annot. § 78–11–12 (Supp.1977). (Emphasis added).

The interests which arise upon accrual of a cause of action for a personal injury include the right of the injured person to receive damages to compensate his estate for its loss due to his injury, and the right to receive damages to compensate himself for his pain and suffering. Survival statutes provide for the continuance of an injured person's cause of action in order to preserve any interests which have accrued in the recovery of damages to his estate should he die prior to the resolution of his suit. Although survival statutes can limit the amount of possible recovery at the moment the cause of action accrues, *Greene v. United States, supra,* provides that the injured person's right to receive that recovery may not be limited absent "unequivocal and inflexible" manifestation of such an intent in the terms of the amendment. No such intent appears in the 1977 amendment. The accrual of Mr. Kynaston's cause of

---

thing that's suffered by the individual; it's not suffered by anyone else." Utah S. Jour., 37th Sess. 197–98 (1967) (Remarks of Senator Welch). *See also* 1974 Utah L.Rev. 519, 534.

11.  The government argued in this case that the "survivor" under the survival statute was the appellant, Alden Kynaston's wife, and that accordingly a new cause of action accrued to her upon her husband's death, which occurred af-

ter a subsequent amendment of the statute. For the above stated reasons, the government's interpretation is incorrect. The "survivor" under the statute was the original cause of action which became a part of Alden Kynaston's estate.

12.  *See* footnote 9.

action established in him, *inter alia,* his right to compensation for loss to his estate. The Utah survival statute in effect at that time provided for a possible full recovery, except pain and suffering. To later limit the maximum recovery for Mr. Kynaston's estate to out-of-pocket expenses because of a subsequent amendment to the statute without an unequivocal expression of legislative intent would be a violation of the rules of construction set out in *Greene. Id.* Therefore, the 1977 amendment was improperly applied retroactively in this case.

Accordingly, this case is reversed and remanded for further proceedings consistent with the views expressed herein.