William BEAUDRY, et al., Respondents,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Petitioner, Appellant.**

No. C9–93–689.

Supreme Court of Minnesota.

June 17, 1994.

William M. Hart, Joseph W.E. Schmitt, Meagher & Geer, and Albert J. Dickinson, Stringer & Rohleder, St. Paul, for appellant.

James F. Dunn, Dunn & Elliott, St. Paul, for respondents.

## OPINION

SIMONETT, Justice.

A cause of action for injury to the person dies with that person (except for special damages). But does the deceased person's claim for underinsured motorist benefits survive the abatement of the underlying tort claim? We answer the question "no" and reverse the contrary ruling of the court of appeals.

On July 29, 1990, Alice Beaudry, age 75, was severely injured when the car in which she was a passenger and which was driven by her husband collided with a car driven by Leonard Defoe. The accident was Defoe's fault.

Alice Beaudry's injuries required extensive medical care, her medical expenses eventually totaling $67,785.83. In October 1990, State Farm paid Alice Beaudry $20,000, the limits of its no-fault medical expense coverage. Initially, it appeared that the other driver, Defoe, was uninsured, and Mr. and Mrs. Beaudry were preparing for an uninsured motorist claim against their own insurer, State Farm.

In May 1991, however, it was learned that Defoe had liability insurance with $30,-000/60,000 limits. The Beaudrys negotiated a settlement with Defoe's liability carrier, with the carrier to pay its $30,000 limit on Alice Beaudry's claim (and $22,500 on William Beaudry's claim). State Farm was given notice of the proposed settlement pursuant to *Schmidt v. Clothier,* 338 N.W.2d 256

(Minn.1983), but it elected not to substitute its own settlement draft. The Beaudrys then proceeded, in mid-November 1991, to conclude their settlement with Defoe on the terms proposed.

At the same time, Beaudrys' counsel also formally advised State Farm it was making a claim for underinsured motorist benefits. The Beaudrys' State Farm policy provided underinsured motorist coverage of $100,000 per person and $300,000 per occurrence. In early January 1992, more medical information having been supplied by the claimants, the Beaudrys twice made demands for the policy limits.

On January 16, 1992, the Beaudrys first informed State Farm that Alice Beaudry was terminally ill with breast cancer and made another demand for the policy limits. On the same day, the Beaudrys commenced this lawsuit against State Farm for breach of contract for failure to pay underinsured motorist limits. Three days later, on January 19, Alice Beaudry died. The cancer which was the cause of her death was unrelated to the injuries received in the auto accident.

The lawsuit alleged William and Alice Beaudry were each entitled to $100,000 in benefits. State Farm moved for summary judgment on the grounds that Alice Beaudry's claim for underinsured motorist benefits abated at her death under Minnesota's survival statute, Minn.Stat. § 573.01 (1992). The trial court granted State Farm's motion. The court of appeals reversed, ruling that the underinsured motorist claim of Alice Beaudry was a contract action not subject to the survival statute. *Beaudry v. State Farm Auto. Ins. Co.*, 506 N.W.2d 673, 675 (Minn. App.1993). We granted State Farm's petition for further review.

The issue before us may be framed as follows: When an underinsured motorist claimant dies of causes unrelated to the auto accident, does her underinsured motorist claim survive the abatement of the underlying tort claim against the tortfeasor? The answer to this question depends on whether the underinsured motorist claim is viewed as a cause of action arising out of an injury to the person, which does not survive the death of the person, or as a contract action, which does survive the person's death.

Our survival statute, Minn.Stat. § 573.01 (1992), reads:

> A cause of action arising out of an injury to the person dies with the person of the party in whose favor it exists, except as provided in section 573.02.[1] All other causes of action by one against another, whether arising in contract or not, survive to the personal representative of the former and against those of the latter.

If Alice Beaudry had died before settling with the tortfeasor, even if she then had a lawsuit pending against the tortfeasor, her claim against the tortfeasor would have abated. With abatement, general damages, such as pain and suffering, die with the person. Indeed, even where the injured person dies from a cause *related* to the injuries and the personal injury action is converted into a wrongful death action, general pain and suffering damages are not recoverable. *See, e.g., Fussner v. Andert,* 261 Minn. 347, 351–52, 113 N.W.2d 355, 358 (1961) (damages in a wrongful death action are for pecuniary loss).

In this case Alice Beaudry's estate[2] seeks to circumvent the survival statute by charac-

---

**1.** Minn.Stat. § 573.02 provides two exceptions to the nonsurvivability of a deceased plaintiff's action arising out of an injury. Under subdivision 1, the personal injury action is converted into a wrongful death action when the death is attributable to the injuries sustained. When death is unrelated to the injuries, then subdivision 2 provides for survivability of a claim for "special damages" as follows:

> When injury is caused to a person by the wrongful act or omission of any person or corporation and the person thereafter dies from a cause unrelated to those injuries, the

trustee appointed in subdivision 3 may maintain an action for special damages arising out of such injury if the decedent might have maintained an action therefor had the decedent lived.

Minn.Stat. § 573.02, subd. 2. Special damages would include medical expenses, lost wages to date of death, and the like.

**2.** The parties have agreed that if Alice Beaudry's UIM claim survives here, on return to the trial court a personal representative will be appointed for her estate to continue with the claim. *See Witthuhn v. Durbahn,* 279 Minn. 437, 439, 157

terizing her UIM lawsuit as a contract action for underinsured motorist benefits. As a contract action, her estate would be able to recover underinsured motorist benefits measured by the general damages that would have been recoverable against the tortfeasor. The Beaudrys concede that these general damages, such as pain and suffering, would be recoverable only up to the time of death, in this case for the period of approximately a year and a half that Alice Beaudry lived after the auto accident.

Recently, in *McIntosh v. State Farm Mutual Automobile Insurance Co.*, 488 N.W.2d 476 (Minn.1992), and in *Employers Mutual Cos. v. Nordstrom*, 495 N.W.2d 855 (Minn. 1993), we discussed the nature of uninsured and underinsured motorist coverage. These are first party coverages, *i.e.*, claims based on contract against one's own insurance company, unlike third party liability coverage where the insurer indemnifies the insured against claims of injured third parties. Nevertheless, as we pointed out in these two cases, liability for UM and UIM benefits is determined by tort law, *i.e.*, by what the tortfeasor would have had to pay the claimant if the tortfeasor had not been uninsured or underinsured.

Thus, in *McIntosh* we cautioned, "In other words, under uninsured motorist coverage, the distinction between *coverage* and *liability under that coverage* is radically different than it is under first party coverage." *McIntosh*, 488 N.W.2d at 479. In *Nordstrom*, we observed that "[a]n underinsured motorist claim is both alike and unlike a tort cause of action." *Nordstrom*, 495 N.W.2d at 856. We went on to say, "Underinsured coverage has generally been understood as excess coverage, to be utilized only after the cause of action against the insured tortfeasor has been concluded." *Id.*

Whether an uninsured or underinsured motorist claim is to be viewed from its contract or tort aspects depends on the question being asked. Thus, for example, in *O'Neill v. Illinois Farmers Insurance Co.*, 381 N.W.2d 439, 440 (Minn.1986), we held that for the purpose of what statute of limitations applied

to an underinsured claim, the claim "sounds in contract and is governed by the 6–year statute of limitations for contracts"; at the same time, in deciding when the statute of limitations begins to run, we held it was "when the accident giving rise to the injury happens." *Id.* An Eighth Circuit case written by Judge Sanborn, *Webber v. St. Paul City Ry. Co.*, 97 F. 140 (8th Cir.1899), which has stood the test of time, is also instructive. There it was held that the estate of a plaintiff injured in a train accident who then died of unrelated causes could not evade the survival statute by alleging a cause of action for breach of contract to transport the plaintiff safely. *Id.* at 141. The contract claim, said the court, arose from an injury to the person and ended with that person's death. *Id.* at 145.

■ This much is clear. The test for survivability is in the substance, not the form, of the cause of action. *Id.* The test, said *Webber*, is whether breach of contract or injury to the person is the "primary and moving cause of the damages sought." *Id.* This is consistent with the test adopted in *Fowlie v. First Minneapolis Trust Co.*, 184 Minn. 82, 85, 237 N.W. 846, 847 (1931), where we said that "the nature of the damages sued for rather than the form of the remedy is the test."

Another case which might be mentioned, and on which the Beaudrys rely, is *Johnson v. Taylor*, 435 N.W.2d 127 (Minn.App.1989). There an attorney breached the attorney-client contract by missing the personal injury statute of limitations, even though he had represented the injured client for almost the entire 6 years following the auto accident. When the plaintiff-client subsequently died of unrelated causes, the court of appeals held that his estate was not precluded by the survival statute from maintaining a legal malpractice action for the "economic loss to the estate." *Id.* at 128. The court of appeals reasoned that "the legal malpractice action arose from respondent's misconduct rather than from Johnson's personal injury." *Id.* at 129. Or in the language of *Webber*, we might

---

N.W.2d 360, 361 (1968). For convenience of expression, we will continue in this opinion to

refer to "the Beaudrys" rather than, with respect to Alice Beaudry, her estate.

say that the legal malpractice was the primary cause of the plaintiff's damages, and that trial of the "lawsuit within the lawsuit," *i.e.*, trial of the personal injury claim, was relatively incidental to the primary wrong visited on plaintiff by his attorney.

This brings us, then, to the Beaudrys' case. The Beaudrys argue that they are not seeking recovery for pain and suffering but rather enforcement of their contractual rights. They point out that prior to Alice Beaudry's death, her personal injury claim against the tortfeasor was concluded by settlement, so that at the time of her death all conditions precedent to bringing her UIM claim had been met; that her contract action had "matured"; and "there existed *nothing but* a contract cause of action against State Farm." (Respondent's emphasis.)

We agree that at the time of Alice Beaudry's death her UIM claim was ready to be concluded and that her right to recover benefits from State Farm was based on the contractual provisions in her policy. But having said this, it is also true that Alice Beaudry had not liquidated her underinsured motorist claim by settlement, verdict, or award prior to her death. At the time of her death, the "liability under that coverage," *see McIntosh,* 488 N.W.2d at 479, still remained to be determined, and her UIM claim was still unresolved and pending.

Significantly, State Farm's policy contractually bound the insurer to "pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle or underinsured motor vehicle." Put another way, the UIM claimant can collect from State Farm what the claimant could have collected in damages for bodily injury from the tortfeasor if the tortfeasor had not been underinsured. And that determination is directly dependent on the law governing "[a] cause of action arising out of an injury to the person." Minn.Stat. § 573.01 (1992).

We conclude that the primary cause of the damages sought to be recovered as UIM benefits is the injury Alice Beaudry suffered in the auto accident. The Beaudrys contend they are not seeking damages for pain and suffering, but this argument elevates form over substance. If the UIM claim can circumvent the survival statute, the UIM claimant recovers damages for pain and suffering up to her death. Under *Fowlie,* 184 Minn. at 85, 237 N.W. at 847, we look to the nature of the damages sought rather than the form of the remedy. Under this test, it is inescapable that Alice Beaudry's claim, sounding primarily in tort for injury to the person, abated with her death.

We must, therefore, reverse the contrary ruling of the court of appeals, thereby reinstating the trial court's summary judgment in favor of State Farm.

We note, however, that the UIM claim of Alice Beaudry's estate for UIM benefits survives to the extent the underlying claim for "special damages" survives under Minn.Stat. § 573.02, subd. 2 (1992). Also, of course, William Beaudry's separate claim for UIM benefits for his own injuries is not involved in this appeal.

Reversed.

COYNE, J., took no part in the consideration or decision of this case.