2003 UT App 78

**ESTATE OF Dorothy BERKEMEIR, by and through its executor, Karen NIELSEN, Plaintiff and Appellee,**

v.

**HARTFORD INSURANCE COMPANY OF THE MIDWEST, Defendant and Appellant.**

**No. 20010437–CA.**

Court of Appeals of Utah.

March 20, 2003.

Anneliese L. Cook and Mark L. Anderson, Christensen & Jensen, P.C., Salt Lake City, for Appellant.

Mark A. Larsen and Lisa C. Rico, Larsen & Gruber, Salt Lake City, for Appellee.

Before JACKSON, P.J., BILLINGS, Associate Presiding Judge, and THORNE, J.

OPINION

THORNE, Judge:

¶1 Hartford Insurance Company of the Midwest (Hartford) appeals the trial court's grant of partial summary judgment in favor of the Estate of Dorothy Berkemeir (the Estate) and the denial of Hartford's motion for summary judgment. We affirm.

BACKGROUND

¶2 On October 16, 1995, James Alexander inexplicably turned his vehicle into oncoming

traffic on Interstate 80 causing a collision with Dorothy Berkemeir's car.[1] Berkemeir was injured, and the medical costs associated with treating her injuries exceeded $38,000.[2] Alexander conceded liability. Subsequently, on October 9, 1996, Berkemeir, without objection from Hartford, her insurer, executed a settlement agreement and release with Alexander and his insurance company for the $50,000 limit of his automobile liability policy. Berkemeir then filed a claim with Hartford demanding additional coverage under her underinsured motorist policy (UIM).[3]

¶ 3 Hartford conceded that Berkemeir's damages exceeded Alexander's liability coverage; however, Hartford disputed the amount Berkemeir was entitled to under her contract. Thus, the parties entered into arbitration to determine the deficiency in coverage that occurred as a result of Alexander's underinsured status. The parties agreed to a hearing date of July 21, 1997. However, because Hartford desired an independent medical examination, the hearing was later rescheduled. Unfortunately, before the arbitration hearing was held, Berkemeir died of causes unrelated to the accident. Following her death, the Estate reduced its demand from $100,000 to $45,580.40, but based on its interpretation of Utah Code Ann. § 78–11–12(1) (1996) (the Survival Statute) Hartford denied the Estate's claim and withdrew from the arbitration. The Estate then filed a complaint in the district court claiming breach of contract, preemptively arguing that the Survival Statute was inapplicable. After Hartford filed an answer, the parties submitted cross-motions for summary judgment preceded by a joint factual stipulation and summary of the parties' legal positions, including argument concerning the applicability of the Survival Statute. Following oral argument, the trial court granted the Es-

tate's motion for partial summary judgment concluding that the action arose out of contract and that the Survival Statute was inapplicable. Hartford petitioned for interlocutory review. The Utah Supreme Court granted the request and transferred the matter to this court. We affirm.

## ISSUE AND STANDARD OF REVIEW

¶ 4 Hartford argues that following Berkemeir's death the Estate's claim was limited by the Survival Statute, thus, the trial court erred in granting the Estate partial summary judgment. "Because summary judgment is not granted as a matter of fact, but rather as a matter of law, we review the trial court's legal conclusions for correctness." *Pixton v. State Farm Mut. Auto. Ins. Co.,* 809 P.2d 746, 748 (Utah Ct.App.1991). Moreover, " '[i]n matters of pure statutory interpretation, [we] review[ ] a trial court's ruling for correctness and give[ ] no deference to its legal conclusions.' " *Lieber v. ITT Hartford Ins. Ctr., Inc.,* 2000 UT 90, ¶ 7, 15 P.3d 1030 (quoting *Stephens v. Bonneville Travel, Inc.,* 935 P.2d 518, 519 (Utah 1997)).

## ANALYSIS

¶ 5 Hartford asserts that Berkemeir's death from causes unrelated to the underlying accident relieves Hartford from the duty to pay the Estate any additional UIM benefits.[4] Hartford predicates this argument on its reading of Berkemeir's UIM policy language and the effect that the Survival Statute has on Hartford's duty under the policy. Accordingly, to determine if the trial court erred, we must determine both Hartford's duty under the contract and what effect the Survival Statute has on that duty under these circumstances.

---

1. Berkemeir was a passenger in the vehicle at the time.

2. In compliance with Berkemeir's insurance policy, Hartford paid her the limits on both her extended coverage provision and personal injury protection clauses, a total of $10,000.

3. Berkemeir demanded the limit of her UIM policy, $100,000.

4. This argument is based on the assumption that the prior amounts paid to Berkemeir satisfied her out-of-pocket expenses, which is all that is required under the Survival Statute. *See* Utah Code Ann. § 78–11–12(1) (1996). Because we conclude that the Survival Statute has no impact on the present case, we do not address in this context the meaning or impact of the phrase "out-of-pocket expenses."

¶ 6 We turn first to the language of Berkemeir's UIM policy. We construe insurance policy language "liberally in favor of the insured and their beneficiaries so as to promote and not defeat the purposes of insurance." *U.S. Fid. & Guar. Co. v. Sandt,* 854 P.2d 519, 521 (Utah 1993) (quotations and citations omitted). Moreover, "provisions that limit or exclude coverage should be strictly construed against the insurer" and "must be interpreted and construed as an ordinary purchaser of insurance would understand it." *Id.* at 523. Berkemeir's UIM policy promised that Hartford would pay Berkemeir

> compensatory damages which an insured is *legally entitled to recover* from the owner or operator of an underinsured motor vehicle because of bodily injury:
>
> 1. Sustained by an insured; and
> 2. Caused by an accident.
>
> The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the underinsured motor vehicle.
>
> We will pay damages under this coverage caused by an underinsured motor vehicle only if 1 or 2 below applies:
>
> 1. The limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements; or
> 2. A tentative settlement has been made between an insured and the insurer of the underinsured motor vehicle and we:
> a. have been given prompt written notice of such tentative settlement; and
> b advance payment to the insured in an amount equal to the tentative settlement within 30 days after receipt of notification.

(Emphasis added.)

¶ 7 We have previously determined that "for an insured to satisfy the 'legally entitled to recover' criterion, Utah law requires a viable claim that is *able* to be reduced to judgment in a court of law." *Peterson v. Utah Farm Bureau Ins. Co.,* 927 P.2d 192, 195 (Utah Ct.App.1996) (emphasis added).

This "typically entails a lawsuit against the [under-]insured tortfeasor to litigate the issues of liability and damages. A judgment favorable to the insured fixes the insurer's contractual duty to satisfy that judgment, within policy limits." *Lima v. Chambers,* 657 P.2d 279, 281 (Utah 1982). Thus, the simplest way "for an insured to satisfy the 'legally entitled to recover' criterion" is in the form of " 'a legal determination of the liability of the [under-]insured motorist and the extent of the damages sustained.' " *Peterson,* 927 P.2d at 195–96 (interpreting *Lyon v. Hartford Accident & Indem. Co.,* 25 Utah 2d 311, 480 P.2d 739, 745 (1971)). However, the Utah Supreme Court has stated, in the context of uninsured motorist insurance;

> "The aim of the uninsured motorist statute is to minimize the catastrophic financial loss for victims of automobile accidents caused by the negligence of uninsured tortfeasors. We believe it is wholly inconsistent with this broad remedial purpose to permit the insurer to evade mandated coverage by erecting an artificial, arbitrary barrier to recovery."

*Marakis v. State Farm Fire & Cas. Co.,* 765 P.2d 882, 884 (Utah 1988) (quoting *Surrey v. Lumbermens Mut. Cas. Co.,* 384 Mass. 171, 424 N.E.2d 234, 238 (1981)). Moreover, " 'the purpose of mandatory uninsured-motorist insurance is "protection equal to that which would be afforded if the offending motorist carried liability insurance .... [T]he insurer stands in the shoes of the uninsured motorist [UM] and must pay if [the motorist] would be required to pay." ' " *Chatterton v. Walker,* 938 P.2d 255, 260 (Utah 1997) (quoting *Fetch v. Quam,* 530 N.W.2d 337, 339 (N.D.1995)). While the court clearly made this statement in reference to uninsured motorist coverage, we see no reason that this logic should not apply equally to statutorily mandated UIM coverage. *See* Utah Code Ann. § 31A–22–305 (2001); *Lieber v. ITT Hartford Ins. Ctr., Inc.,* 2000 UT 90, ¶ 8, 15 P.3d 1030 (accepting our application of UM case law to cases involving UIM claims).

¶ 8 The supreme court has also determined that once an insured claims under their UIM coverage, the relationship between the par-

ties changes from a third-party relationship, to a first-party adversarial relationship. *See Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 799 (Utah 1985). As a result, the supreme court concluded that "the duties and obligations of the parties are *contractual* rather than fiduciary. Without more, a breach of those implied or express duties can give rise only to a cause of action in contract, not one in tort." *Id.* at 800 (footnote omitted) (emphasis added).

 ¶ 9 Hartford, after acknowledging the existence of the preceding authority, argues that this case is instead controlled by *Peterson v. Utah Farm Bureau Ins. Co.*, 927 P.2d 192 (Utah Ct.App.1996), and that absent a legal determination of Berkemeir's damages, they were under no contractual duty concerning Berkemeir's claim either before or after her death. In *Peterson*, we concluded that " 'a legal determination of the liability of the [under-]insured motorist and the extent of the damages sustained,' " *id.* at 196 (citation omitted), are predicate elements necessary to trigger an insurer's contractual duty. However, in *Lieber* the Utah Supreme Court adopted a different interpretation of the phrase "legally entitled to recover," and concluded that a claimant is legally entitled to recover if they "have 'a viable claim that is *able* to be reduced to judgment.' " *Lieber*, 2000 UT 90 at ¶ 8, 15 P.3d 1030 (emphasis added) (quoting *Peterson*, 927 P.2d at 195). In so concluding, the supreme court, by inference, chose not to adopt the more rigorous standard we set forth in *Peterson*. Accordingly, to qualify under the "legally entitled to recover" language of a UIM contract, a party is not required to establish that a legal determination has been made. Rather, absent specific language to the contrary contained within the contract, a party is "legally entitled to recover" if they can show the existence of a " 'viable claim that is *able* to be reduced to judgment.' " *Id.* (emphasis added) (citation omitted). We see no reason that this showing cannot be made with either a judgment entered by a trial court, or a formal, or informal, settlement agreement between the parties.

¶ 10 Here, Hartford accepted from the outset the fact that Alexander caused the acci-

dent that resulted in Berkemeir's injuries. Hartford, without objection, allowed Berkemeir to enter into a settlement and release with Alexander and his insurance company for the limits of his policy. Then, when Berkemeir approached Hartford and submitted a demand under the terms of her UIM policy, Hartford conceded that her injuries exceeded the limits of Alexander's policy. To determine the amount due, the parties, under the terms of Berkemeir's policy, entered into arbitration. We conclude that Hartford's concessions concerning Alexander's liability and its concession that Berkemeir's damages exceeded Alexander's policy limits, as well as its reliance on language from Berkemeir's insurance contract relating to arbitration, qualify as a settlement "that is able to be reduced to judgment in a court of law." *Id.* at 195. Thus, by its own actions, Hartford acknowledged its duty under the contract concerning Berkemeir's UIM claim. *See U.S. Fid. & Guar. Co. v. Sandt*, 854 P.2d 519, 521 (Utah 1993) (setting forth our rule requiring this court to construe insurance policy language "liberally in favor of the insured and their beneficiaries so as to promote and not defeat the purposes of insurance" (quotations and citations omitted)).

 ¶ 11 Our conclusion does not, however, necessarily resolve the question of whether the Estate's claim is limited by the Survival Statute. To make that determination, we must examine the Survival Statute to determine its effect on this claim. When we are "called upon to interpret a statute, 'our primary goal is to give effect to the legislature's intent in light of the purpose the statute was meant to achieve.' " *Lieber*, 2000 UT 90 at ¶ 7, 15 P.3d 1030 (quoting *Evans v. State*, 963 P.2d 177, 184 (Utah 1998)). The Survival Statute in force at the time of Berkemeir's death provides;

(a) Causes of action arising out of personal injury to the person or death caused by the wrongful act or negligence of another do not abate upon the death of the wrongdoer or the injured person.

. . . .

(b) If prior to judgment or settlement the injured person dies as a result of a cause other than the injury received as

a result of the wrongful act or negligence of the wrongdoer, the personal representative or heirs of that person are entitled to receive no more than the out-of-pocket expenses incurred by or on behalf of that injured person as a result of his injury.

Utah Code Ann. § 78–11–12 (1996). Hartford's argument relies on the phrase "arising out of personal injury" and focuses on the intended scope of this language. Thus, we examine the statute to determine the intended scope of its coverage.

¶ 12 Hartford's interpretation of the phrase "arising out of personal injury" suggests that the statute is meant to limit any claim involving a personal injury when the person injured dies before the action is fully adjudicated. The Estate, on the other hand, urges a different interpretation focusing more on the general fact that tort actions "arise out of personal injury" and asserting, therefore, that the Survival Statute applies only to actions in tort. Because we conclude that both interpretations are reasonable, *see Derbidge v. Mutual Protective Ins. Co.,* 963 P.2d 788, 791 (Utah Ct.App.1998) (" 'Ambiguous' means capable of ' "two or more *plausible* meanings." ' " (citations omitted)), we look beyond the statute's plain language to determine the legislative intent. *See id.* ("When statutory ambiguity exists, we must determine the 'legislature's intent in light of the entire statute's purpose.' . . . Our analysis is further guided by the Legislature's blanket directive that statutes 'be liberally construed with a view to effect the objects of the statutes and to promote justice.' " (citations omitted)).

¶ 13 In *Kynaston v. United States,* 717 F.2d 506 (10th Cir.1983), the Tenth Circuit Court of Appeals addressed Utah's Survival Statute and described its genesis in relatively specific terms. The court explained;

At common law, actions for personal injury torts . . . do not survive the death of the wrongdoer. To remedy this defect, Utah enacted its first survival statute in 1953. The purpose of the statute was not to create a new cause of action as the wrongful death statute did, but rather to abrogate the common law rule of abatement

and continue or perpetuate ("survive") a cause of action in existence before the wrongdoer's [or victim's] death.

*Id.* at 509. The court further stated, "[s]urvival statutes provide for the continuance of an injured person's cause of action in order to preserve any interests which have accrued in the recovery of damages to his estate should he die prior to the resolution of the suit." *Id.* at 511. We agree with the Tenth Circuit's reading, and after reviewing the history of Survival Statutes in general, we agree with the position urged by the Estate. Our conclusion is supported by the general history surrounding survival statutes, which clearly indicates that "[b]oth at common law and under statute, it is a general rule that a cause of action founded on a contract survives the death of either party and a pending contract action does not abate on the death of a party." 1 C.J.S. *Abatement and Revival* § 147(a) (1994) (footnotes omitted). Moreover, our conclusion is further supported by the fact that at common law, actions that are only "nominally laid in tort," but actually lay in contract, generally are not subject to abatement. *Id.* § 147(b) (footnote omitted).

¶ 14 We conclude that the Survival Statute was adopted to abrogate the common law rule of abatement in tort actions that was applied following the death of either the tortfeasor or the injured party. *See id.* § 130. Because we can discern no other reason for the legislature's adoption of the Survival Statute beyond its desire to mitigate the common law rule of abatement, we conclude that the elimination of the abatement of tort actions was the intended target of the Survival Statute.

¶ 15 Here, while there is no dispute that the origins of Berkemeir's claim against Alexander "arose out of personal injury," the subject of the present dispute does not actually arise from her physical injuries. Rather, the present dispute arose only after Hartford's duty under the contract was triggered and Hartford then allegedly failed to meet its obligation. Thus, the Estate's claim arose solely from Hartford's alleged breach of the contract and not from Berkemeir's personal injury. Therefore, because the Estate's claim sounds in contract, not tort, it is unaf-

fected by the Survival Statute. *But see Beaudry v. State Farm Mut. Auto. Ins. Co.,* 518 N.W.2d 11, 13–14 (Minn.1994) (concluding, under nearly identical circumstances, that the cause of action was limited by Minnesota's Survival Statute).

¶ 16 Accordingly, we affirm the trial court's order denying Hartford's motion for summary judgment and granting the Estate partial summary judgment. Thus, we remand this case to the trial court to determine the extent of the contractual damages.

## CONCLUSION

¶ 17 Hartford's concessions concerning liability and the extent, if not the specific amount, of damages resulting from Berkemeir's accident triggered its duties under the contract. Moreover, the Survival Statute is intended to abrogate the common law rule of abatement in tort actions and has no affect on contract claims. Accordingly, we affirm the trial court's decision to grant the Estate partial summary judgment.

¶ 18 WE CONCUR: NORMAN H. JACKSON, Presiding Judge, and JUDITH M. BILLINGS, Associate Presiding Judge.