2004 UT 104

**ESTATE OF Dorothy BERKEMEIR, by and through its executor, Karen NIELSEN, Plaintiff and Respondent,**

v.

**HARTFORD INSURANCE COMPANY OF THE MIDWEST, Defendant and Petitioner.**

No. 20030321.

Supreme Court of Utah.

Dec. 14, 2004.

Mark A. Larsen, Lisa C. Rico, Stacy McNeill, Salt Lake City, for plaintiff.

Mark L. Anderson, Karra J. Porter, Salt Lake City, for defendant.

PARRISH, Justice:

¶ 1 In this case, we are asked to address the scope of section 78–11–12 of the Utah Code (the "Survival Statute"). Under certain circumstances, the Survival Statute limits the damages recoverable in personal injury actions. We must determine whether the

Survival Statute applies to a claim for underinsured motorist benefits brought pursuant to an insurance policy. The court of appeals held that it did not, reasoning that the Survival Statute applies only to actions in tort. We affirm, holding that the Survival Statute is inapplicable to causes of action arising out of an alleged breach of contract.

## BACKGROUND

¶ 2 On October 16, 1995, Dorothy Berkemeir was injured, incurring more than $38,000 in medical expenses, when a car driven by James Alexander suddenly turned in front of Berkemeir's car as she was traveling along Interstate 80. Alexander admitted liability and settled with Berkemeir for $50,000, the limit of Alexander's liability insurance policy. In addition to this settlement, Berkemeir recovered $10,000 for personal injury protection and extended coverage benefits based on an automobile insurance policy of her own, which was issued by Hartford Insurance Company of the Midwest ("Hartford"). Berkemeir's Hartford policy also contained underinsured motorist coverage up to $100,000. Because the settlement with Alexander failed to fully compensate her for her losses resulting from the accident, Berkemeir submitted a claim to Hartford for the full amount of her $100,000 underinsured motorist coverage.

¶ 3 Hartford refused to pay Berkemeir's claim. While Hartford acknowledged that Berkemeir's damages exceeded her $50,000 recovery from Alexander, thus entitling her to some underinsured motorist benefits, Hartford disputed the extent of her damages, asserting that they were not so extensive as to merit payment of the entire $100,000 policy limit. Hartford and Berkemeir agreed to resolve their dispute by submitting the issue to arbitration. However, before the arbitration hearing took place, Berkemeir died from causes unrelated to the underlying automobile accident.

¶ 4 Following Berkemeir's death, her estate lowered its claim for underinsured motorist benefits against Hartford from the $100,000 policy limit to $45,580.40. Hartford, however, withdrew both its concession that Berkemeir was entitled to at least some underinsured motorist benefits and its consent to arbitration, insisting that, under the Survival Statute, Berkemeir's estate was not entitled to recover any of the underinsured motorist benefits to which Berkemeir would have been entitled had she lived. Specifically, Hartford asserted that because Berkemeir's claim was a "cause[ ] of action arising out of personal injury," [1] the Survival Statute limited the estate's claim to out-of-pocket expenses, for which Berkemeir had already been "fully compensated."

¶ 5 Berkemeir's estate sued Hartford in district court for breach of contract, arguing that the Survival Statute did not apply to the

---

1. At all times relevant to this action, the Survival Statute provided:

    (a) *Causes of action arising out of personal injury to the person or death caused by the wrongful act or negligence of another* do not abate upon the death of the wrongdoer or the injured person. The injured person or the personal representatives or heirs of the person who died have a cause of action against the wrongdoer or the personal representatives of the wrongdoer for special and general damages, subject to Subsection (1)(b).

    (b) If prior to judgment or settlement the injured person dies as a result of a cause other than the injury received as a result of the wrongful act or negligence of the wrongdoer, the personal representatives or heirs of that person are entitled to receive no more than the out-of-pocket expenses incurred by or on behalf of that injured person as the result of his injury.

    Utah Code Ann. § 78–11–12(1) (1996) (amended 2001) (emphasis added).

    Subsection (b) of the Survival Statute was amended in 2001. It now reads as follows:

    If prior to judgment or settlement the injured person dies as a result of a cause other than the injury received as a result of the wrongful act or negligence of the wrongdoer, the personal representatives or heirs of that person have a cause of action against the wrongdoer or personal representatives of the wrongdoer only for special damages occurring prior to death that result from the injury caused by the wrongdoer, including income loss. "Special damages" does not include pain and suffering, loss of enjoyment of life, and other not readily quantifiable damages frequently referred to as general damages.

    Utah Code Ann. § 78–11–12(1)(b) (2002). All subsequent references to section 78–11–12 will refer to the 1996 version unless otherwise indicated.

estate's contract action. Hartford moved for summary judgment, and the estate responded with a cross-motion for partial summary judgment on the issue of liability. The district court denied Hartford's motion and granted partial summary judgment in favor of the estate, reasoning that the estate's cause of action arose out of the contract for insurance between Hartford and Berkemeir, not out of Berkemeir's personal injuries. Accordingly, the Survival Statute did not operate to limit the estate's claim to out-of-pocket expenses.

¶ 6 Hartford filed a petition for interlocutory appeal, which we granted. We subsequently transferred the appeal to the court of appeals, which affirmed the decision of the district court. *Estate of Berkemeir v. Hartford Ins. Co.*, 2003 UT App 78, ¶ 1, 67 P.3d 1012. We granted certiorari on the question of whether the Survival Statute applies to the estate's breach of contract claim. Because we agree with the court of appeals that the Survival Statute does not apply to the estate's claim, we affirm.

## ANALYSIS

▮▮▮ ¶ 7 "On certiorari, we review the court of appeals' decision and not the trial court's." *Fairbourn Commercial, Inc. v. Am. Hous. Partners, Inc.*, 2004 UT 54, ¶ 6, 94 P.3d 292. Because this case presents an issue of statutory interpretation, "[w]e review the court of appeals' interpretation of the relevant statute for correctness, according no deference to its conclusions." *Regal Ins. Co. v. Canal Ins. Co.*, 2004 UT 19, ¶ 5, 93 P.3d 99.

¶ 8 Subsection (1)(a) of the Survival Statute provides that "[c]auses of action arising

out of personal injury ... caused by the wrongful act or negligence of another do not abate upon the death of the ... injured person." Utah Code Ann. § 78–11–12(1)(a). However, subsection (1)(b) imposes a limitation on this rule of survival. Specifically, in cases where an injured person dies from causes unrelated to the underlying tort, the heirs of the injured person may recover only the out-of-pocket expenses incurred as a result of the injury. *Id.* § 78–11–12(1)(b).

¶ 9 In addressing the Survival Statute, the court of appeals held that the statutory phrase "[c]auses of action arising out of personal injury" could reasonably be interpreted either to apply or not to apply to an insurance claim for personal injuries and that it was therefore ambiguous. *Berkemeir*, 2003 UT App 78 at ¶ 12, 67 P.3d 1012. The court of appeals relied on its analysis of the history and purpose of the Survival Statute in reaching its conclusion that the statute was intended to apply solely to tort actions. *Id.* at ¶¶ 13–14. Although the court of appeals' analysis is persuasive and insightful, we decline to adopt it because we do not conclude that the Survival Statute is ambiguous.

▮▮▮ ¶ 10 Hartford asserts that the ordinary and plain meaning of the phrase "arising out of" requires us to apply section 78–11–12(1)(b) to the estate's claim because that claim originated from or grew out of the injuries Berkemeir sustained in the accident.[2] However, this interpretation focuses too narrowly on the phrase "arising out of" and gives insufficient weight to the surrounding context. We have counseled against such interpretations, holding that the "terms of a statute are to be interpreted as a comprehensive whole and not in a piecemeal fashion."

---

2. Hartford also contends that Berkemeir did not have a mature underinsured motorist coverage claim under section 31A–22–305(9)(a)(i) of the Utah Code because she was not "legally entitled to recover damages" from Alexander as that phrase has been interpreted in our case law. *See Lieber v. ITT Hartford Ins. Ctr., Inc.*, 2000 UT 90, ¶ 8, 15 P.3d 1030 (holding that "legally entitled to recover" means having " 'a viable claim that is able to be reduced to judgment in a court of law' " (quoting *Peterson v. Utah Farm Bureau Ins. Co.*, 927 P.2d 192, 195 (Utah Ct.App.1996))). After considering this argument, the court of appeals concluded that Hartford's actions, in-

cluding its "concession that Berkemeir's damages exceeded Alexander's policy limits," constituted sufficient evidence of "a settlement 'that is able to be reduced to judgment in a court of law.' " *Berkemeir*, 2003 UT App 78 at ¶ 10, 67 P.3d 1012. Although Hartford's brief contains considerable argument with respect to this issue, Hartford did not include it in its petition for certiorari as a separate question presented for review. Because it failed to do so, and because this issue is distinct from the question actually presented for review, namely, whether the Survival Statute "is limited solely to tort actions," we do not address it.

*Bus. Aviation of S.D., Inc. v. Medivest, Inc.,* 882 P.2d 662, 665 (Utah 1994) (internal quotations omitted).

¶ 11 The plain meaning of the phrase "[c]auses of action arising out of personal injury," taken as a whole and in context, mandates a conclusion that the Survival Statute does not apply to the estate's cause of action. The estate's cause of action did not arise out of the personal injuries Berkemeir sustained in the accident. Alexander, not Hartford, was the party who breached a duty of care to Berkemeir by turning into her lane of traffic. The cause of action against Hartford arose only when Hartford refused to pay the estate, an obligation it assumed when it entered into the insurance contract with Berkemeir. Although we recognize that Berkemeir's personal injuries were the catalyst for the contractual dispute, it is incorrect to say that this is a "cause of action arising out of a personal injury." Hartford and Berkemeir entered into an agreement wherein both undertook certain obligations. Berkemeir agreed to pay premiums, and Hartford, in turn, agreed that it would provide coverage to protect Berkemeir in the event that she was injured by an underinsured motorist. These conditions, among others, were specified in a policy that Hartford and Berkemeir agreed would define their respective obligations. The most that can be said is that Hartford's contractual obligations to Berkemeir (and her estate) were contingent on the existence of personal injuries. The personal injuries, however, did not give rise to Hartford's obligations. Rather, Hartford's obligations arose out of its contract with Berkemeir.

¶ 12 Our holding today is consistent with the rule we announced in *Beck v. Farmers Insurance Exchange,* 701 P.2d 795 (Utah 1985), in which we held that the duties owed by an insurer to its first-party insured are contractual in nature and that a breach of these duties "can give rise only to a cause of action in contract, not one in tort." *Id.* at 800. Interpreting the language of the Survival Statute so broadly as to include actions in contract where the subject matter of the contract involves personal injury insurance coverage would reduce the significance and practical import of the distinction between contract and tort, a result we eschewed in *Beck. Id.* at 799–800.

¶ 13 Hartford relies on *Meadow Valley Contractors, Inc. v. Transcontinental Insurance Co.,* 2001 UT App 190, ¶ 14, 27 P.3d 594, in arguing that the phrase "arising out of" is "very broad, general and comprehensive." In so arguing, however, Hartford focuses entirely on the interpretation of the three-word phrase, according no weight to the different context in which the phrase occurred. In *Meadow Valley Contractors,* the court noted the breadth of the phrase "arising out of" only " '[a]s used in a *liability insurance policy.*' " *Id.* (emphasis added) (quoting *Viking Ins. Co. of Wis. v. Coleman,* 927 P.2d 661, 663 (Utah Ct.App.1996)). In this case, however, we are asked to interpret the phrase in the context of a statute, section 78–11–12(1)(a), adopted for the purpose of abrogating the common law rule of abatement in tort actions. The distinction in contexts is evident. It is also determinative inasmuch as statutory language cannot be interpreted in isolation. Rather, it must be interpreted in light of the statute as a whole and its apparent statutory purpose. *See Calhoun v. State Farm Mut. Auto. Ins. Co.,* 2004 UT 56, ¶ 18, 96 P.3d 916 ("[W]hen deciding questions of statutory interpretation we do not look to language in isolation. Rather, we look first to the statute's plain language, in relation to the statute as a whole, to determine its meaning."); *State v. Burns,* 2000 UT 56, ¶ 25, 4 P.3d 795 ("[O]ur primary goal in interpreting statutes is to give effect to the legislative intent, as evidenced by the plain language, in light of the purpose the statute was meant to achieve.").

¶ 14 Hartford also urges a contrary interpretation of the Survival Statute by maintaining that the interpretation we adopt distorts Utah's scheme of underinsured motorist coverage. Relying on the purpose of underinsured motorist coverage, which is "to provide insurance protection to the insured against damages caused by a negligent motorist as if the motorist had another liability policy in the amount of the underinsured policy," *U.S. Fid. & Guar. Co. v. Sandt,* 854 P.2d 519, 521 (Utah

1993), Hartford reasons that underinsured motorist coverage should not be available where liability coverage is not.[3] According to Hartford, if the Survival Statute operates to reduce the recovery available from any underlying personal injury claim against the tortfeasor, it should also reduce the recovery available under any policy of underinsured motorist coverage.

¶ 15 We acknowledge that the statutory interpretation we adopt produces an incongruous result in those few cases, such as this, where an injured party resolves her claim against a tortfeasor and then dies from causes unrelated to the accident prior to resolving her claim for underinsured motorist benefits. In such cases, the accident victim's death from causes unrelated to the accident could result in a situation where the victim's estate is able to recover more in the way of underinsured motorist benefits than it could have recovered from the tortfeasor had the tort claim not been resolved prior to the victim's death. This result, however, is a consequence of the plain language of the Survival Statute. While it is arguably inconsistent with the purpose of underinsured motorist coverage, *see id.*, it does not present a compelling reason to depart from our reliance on the plain meaning of the statutory language.

¶ 16 Hartford also points out that the Minnesota Supreme Court, in *Beaudry v. State Farm Mutual Automobile Insurance Co.*, 518 N.W.2d 11, 11 (Minn.1994), reached a result contrary to ours when interpreting a statute similar to Utah's Survival Statute. That court concluded that because the measure of damages in an underinsured motorist claim is derived from a tort against the insured, the cause of action itself emerges primarily out of tort. *Id.* at 13. The court reasoned:

> Significantly, State Farm's policy contractually bound the insurer to "pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle or underin-

sured motor vehicle." Put another way, the [underinsured motorist] claimant can collect from State Farm what the claimant could have collected in damages for bodily injury from the tortfeasor if the tortfeasor had not been underinsured. And that determination is directly dependent on the law governing " '[a] cause of action arising out of an injury to the person.' "

*Id.* at 14 (quoting Minn.Stat. § 573.01 (1992) (alteration in original)). To hold otherwise, the court declared, would be to "elevate form over substance." *Id.*

¶ 17 In our view, the Minnesota court attached greater weight to a substance-over-form approach than it did to the plain meaning of the statutory language. Even were we to adopt the substance-over-form approach, however, we would nonetheless disagree with the conclusion that an action for breach of a contract for underinsured motorist coverage is, in substance, a tort action. Such a conclusion ignores important distinctions between claims for personal injury and claims for benefits under an underinsured motorist policy. For example, unlike damages for which a tortfeasor is responsible, an insurer's liability is contingent upon performance of the insured's obligations under the contract. Moreover, an insurer's exposure is limited by the amount of the premiums the insured agreed to pay. These features of the underinsured motorist contract, and actions for its breach, illustrate that the insurer does not simply step into the shoes of the tortfeasor, or his liability insurer, to make the insured whole. Rather, the accident victim's claim for damages arises out of the terms of her contract with her insurer—not out of her underlying injuries.

## CONCLUSION

¶ 18 We affirm the court of appeals' conclusion that the Survival Statute does not apply to actions for breach of an underinsured motorist contract. We accordingly remand the

---

3. As support for this reasoning, Hartford poses the following hypothetical: If, before her death, Berkemeir had not settled with Alexander, the Survival Statute clearly would have limited the estate's claim against Alexander, after Berkem-

eir's death, to out-of-pocket expenses. Under such a scenario, Alexander's liability insurance would have been adequate and the estate would have had no claim for underinsured motorist benefits.

case for a determination of the extent of the contractual damages.

¶ 19 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice NEHRING concur in Justice PARRISH's opinion.